IN RE JESSICA S.*
(AC 17980)

Lavery, Landau and Spear, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued November 10, 1998—officially released February 2, 1999

*Scott Allan Sandler*, for the appellant (respondent).

*Eliot D. Prescott*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman* and *Carolyn K. Querijero*, assistant attorneys general, for the appellee (petitioner).

*Philip N. Walker*, for the minor child.

*Opinion*

SPEAR, J. The respondent mother appeals from the judgment of the trial court terminating her parental rights with respect to her child, Jessica.[1] She claims

---

[1] General Statutes (Rev. to 1995) § 17a-112 (d) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and

that the trial court (1) lacked subject matter jurisdiction because of alleged procedural irregularities in the earlier neglect proceeding, (2) terminated her parental rights under circumstances in which her mental illness, in conjunction with the special needs of her child, made it impossible for her to rehabilitate herself sufficiently to assume a responsible position in the life of her child, (3) made clearly erroneous findings of critical facts, especially with respect to whether the requirements of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., had been met and (4) improperly refused to sequester the petitioner's witnesses. We decline to review the claim with respect to the ADA because it was not raised in the trial court or made here as either a constitutional claim[2] or plain error.[3] We find the other claims

shall make written findings regarding: (1) The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the department of children and families has made reasonable efforts to reunite the family pursuant to the federal Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

[2] Review of unpreserved constitutional claims is available in civil cases under certain circumstances. See *Hurtado* v. *Hurtado*, 14 Conn. App. 296, 299–300, 541 A.2d 873 (1988).

[3] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial. . . .

to be without merit and affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of these claims. Jessica was born to the respondent on September 10, 1989. Jessica's father died on April 27, 1993. The respondent suffered from a mental illness and, after she and Jessica were found wandering on an interstate highway in Rhode Island in June of 1993, Jessica's paternal grandfather filed a petition for termination of the respondent's parental rights in the Probate Court.

On June 8, 1993, the Probate Court awarded temporary custody of Jessica to her grandfather. On August 12, 1993, the termination petition was transferred to the Superior Court on the motion of Jessica's attorney. The petitioner, the commissioner of children and families, filed a neglect petition on August 19, 1993, and on August 24, 1994, the trial court, *Barnett, J.*, found that Jessica was neglected and committed her to the custody of the department of children and families (department). Jessica's grandfather and his wife had qualified under state guidelines to become foster parents during the time that the neglect proceedings were pending and thus Jessica was able to remain with them throughout the proceedings.

The petitioner filed a termination petition on September 22, 1995, and alleged that despite the reasonable efforts and assistance of the department, the respondent had failed to achieve sufficient rehabilitation so that she could assume a responsible position in Jessica's life. The petition to terminate the respondent's parental rights was granted on December 17, 1997, and this appeal followed.

The court may in the interests of justice notice plain error not brought to the attention of the trial court . . . ."

## I

The respondent claims that the trial court lacked subject matter jurisdiction to terminate her parental rights. First, she argues that the court had no authority to adjudicate a neglect petition filed against her because Jessica was in the custody of her grandfather, not the respondent, when the neglect and termination petitions were filed. The respondent then asserts that as a consequence of the improper judgment of neglect, the trial court had no subject matter jurisdiction over the petition to terminate the respondent's parental rights.

Before addressing this claim, we note that "[j]urisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy." (Internal quotation marks omitted.) *Konover* v. *West Hartford*, 242 Conn. 727, 740, 699 A.2d 158 (1997).

The respondent's claims amount to a collateral attack on the judgment of neglect and commitment to the department from which she took no appeal. She asserts that the petitioner has no right to file a neglect petition naming the parent as a respondent where the Probate Court has awarded temporary custody to a grandparent. She cites no authority in support of that proposition.[4] As the petitioner notes in her brief, if physical custody by the respondent parent were a jurisdictional prerequisite to bringing a neglect petition, the department would be powerless in cases where a parent abandons a child.

---

[1] If this claim did not raise a question of subject matter jurisdiction, we would not review it because it is inadequately briefed. See *Brown* v. *Villano*, 49 Conn. App. 365, 372, 716 A.2d 111, cert. denied, 247 Conn. 904, 720 A.2d 513 (1998). A question of subject matter jurisdiction must be addressed and disposed of before moving on, if at all, to other issues. See *Papa* v. *Thimble Creek Condominium Assn., Inc.*, 50 Conn. App. 139, 141–42, 716 A.2d 947 (1998).

Such a result would be absurd. Our statutory scheme specifically provides for orders of temporary custody prior to the hearing of neglect petitions. See General Statutes § 46b-129 (b).[5] The respondent gives no reason why the Superior Court lacked jurisdiction simply because the Probate Court ordered temporary custody rather than the Superior Court.

The Superior Court is authorized to adjudicate such petitions pursuant to General Statutes § 46b-129 (a). Section 46b-129 (a) provides in relevant part: "[T]he commissioner of children and families . . . having information that a child or youth is neglected, uncared-for or dependent, may file with the superior court which has venue over such a matter a verified petition plainly stating such facts as bring the child or youth within the jurisdiction of the court as neglected, uncared-for, or dependent . . . ." Nothing in § 46b-129 requires that the respondent parent in a neglect proceeding have custody for the court to adjudicate a neglect petition. Clearly, the court had subject matter jurisdiction.

II

The respondent next claims that § 17a-112 cannot be applied to terminate the parental rights of a person with a mental illness that, through no fault of her own, prevents her from achieving rehabilitation as required by the statute. The respondent cites no authority for this proposition and we have found none. This court has held that where a "trial court's decision to terminate the respondent's parental rights was made pursuant to

[5] General Statutes § 46b-129 (b) provides in relevant part: "If it appears from the [allegations of a neglect petition] and other verified affirmations of fact accompanying the petition . . . that there is reasonable cause to find that the child's . . . condition or the circumstances surrounding his care require that his custody be immediately assumed to safeguard his welfare, the court shall . . . (2) vest in some suitable agency or person the child's . . . temporary care and custody pending a hearing upon the petition . . . ."

the statutory requirements of General Statutes § 17-43a (b) [now § 17a-112], which makes no distinction between mentally ill and other persons," there is no violation of article twenty-one of the amendments to the Connecticut constitution, which forbids discrimination based on a person's mental condition.[6] *In re Nicolina T.*, 9 Conn. App. 598, 606, 520 A.2d 639, cert. denied, 203 Conn. 804, 525 A.2d 519 (1987). Our Supreme Court has stated that "[i]n weighing the interests of the child against the hardship imposed on the parent, the legislature may properly strike the balance at the point where the mental . . . deficiency, even though involving no fault, is so great as to render the parent incapable of measuring up to the child's needs as those are delineated in § 17-43a (a) (3) [now § 17a-112 (c)]." *In re Juvenile Appeal (83-BC)*, 189 Conn. 66, 78–79, 454 A.2d 1262 (1983). The termination statute in effect at that time, General Statutes (Rev. to 1983) § 17-43a, contained a provision that allowed the court to grant a petition for termination of parental rights upon a finding "that over an extended period of time . . . the parents, by reason of continuing physical or *mental* deficiency . . . will be unable to provide him with the care, guidance and control necessary to his physical, educational, moral and emotional well-being . . . ." (Emphasis added.) That provision with respect to mental deficiency was deleted by Public Acts 1983, No. 83-478, § 1. We noted in *In re Nicolina T.* that the trial court properly terminated the respondent's parental rights, not because of her mental condition, but because of her inability to function as a parent. We also said in *In re Nicolina T.* that "[t]ermination has been consistently recognized as being in the best interest of the child

---

[6] Article twenty-one of the amendments to the Connecticut constitution provides in relevant part: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of . . . mental disability."

when the parent has a mental deficiency or illness which renders her unable to provide the child with necessary care." *In re Nicolina T.*, supra, 605.

Although we understand and appreciate the hardship suffered by the respondent mother, we conclude that the trial court properly found that the respondent had failed to rehabilitate herself pursuant to § 17a-112.

### III

The respondent next claims that the trial court made clearly erroneous factual findings pursuant to the seven statutory factors enumerated in General Statutes (Rev. to 1995) § 17a-112 (d)[7] and improperly failed to take into account the requirements of the ADA in considering those termination factors.

The respondent's claim with respect to § 17-112 (d) (1), (2) and (6) are all based on the ADA and were not raised in the trial court. The respondent never requested that the trial court make factual findings as to whether the services rendered and efforts made satisfied the ADA requirements. She briefs no constitutional or plain error claim and we, therefore, decline to review this unpreserved claim. See *State* v. *Jones*, 50 Conn. App. 338, 347, 718 A.2d 470 (1998).[8]

"Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with

---

[7] See footnote 1.

[8] The respondent has no quarrel with § 17a-112 (d) (5) which determined the child's age.

the definite and firm conviction that a mistake has been committed. . . . *United Components, Inc.* v. *Wdowiak*, 239 Conn. 259, 263, 684 A.2d 693 (1996)." (Internal quotation marks omitted.) *In re Michael A.*, 47 Conn. App. 105, 109, 703 A.2d 1146 (1997).

With respect to § 17a-112 (d) (3), (4) and (7),[9] the respondent's basic claim is that the trial court should have weighed both the evidence and credibility differently. With respect to similar claims regarding weight and credibility we have said: "The respondent disputes much of the testimony presented at the hearing, and alleges that such testimony contained many uncertainties and discrepancies. . . . These claims relate to the weight to be given to the testimony, and are not appropriately directed to an appellate court. . . . It is the trial court which has the benefit of having all the parties before it, and is thus in the best position to analyze the testimony and evidence and reach an ultimate conclusion regarding whether the statutory criteria for termination have been met." (Citations omitted; internal quotation marks omitted.) *In re Nicolina T.*, supra, 9 Conn. App. 604–605.

We have reviewed the record and the evidence in the case and we conclude that the trial court's findings of fact were not clearly erroneous.

IV

The respondent's last claim is that the trial court improperly refused her request to sequester the witnesses who testified for the petitioner. She acknowledges that sequestration under the circumstances here was discretionary but does not allege that the trial court

---

[9] With respect to § 17a-112 (d) (3), the respondent asserts that the trial court concluded that there had been therapeutic visits with the mother but that the record is devoid of any evidence to support this conclusion. Even so, we conclude that the trial court appropriately considered this factor and its conclusion is not clearly erroneous.

abused its discretion. Her only complaint is that "[i]t is completely unnecessary that [the petitioner] have three (3) representatives present, especially when all have testified." We conclude that the trial court acted properly, particularly as the respondent fails to allege an abuse of discretion and can point to nothing that happened during the hearing that would indicate that any witness benefited from the testimony of any other witness.

The judgment is affirmed.

In this opinion the other judges concurred.