# IN RE DAVID L.*
## (AC 18598)

Schaller, Hennessy and Dupont, Js.

Argued April 20—officially released July 13, 1999

*William R. Kinloch,* for the appellant (respondent father).

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Bette L. Paul*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Lynn Alvey Dawson*, for the minor child.

*Opinion*

DUPONT, J. The respondent father appeals from the judgment of the trial court adjudicating his minor son neglected. The sole issue on appeal is whether the father, a noncustodial parent, was entitled to participate in the adjudicatory phase of a neglect proceeding in which the custodial parent pleaded nolo contendere, in order to show that he was not responsible for the child's neglect. We conclude that there is no practical relief this court can afford the father and, therefore, the appeal is moot.

The following facts were found by the court. On April 17, 1998, the commissioner of children and families filed an order of temporary custody and a neglect petition in the Superior Court for Juvenile Matters, alleging that David L. was being (1) denied proper care and attention, physically, educationally, emotionally, or morally, and (2) permitted to live under conditions, circumstances or associations injurious to his well-being. The neglect petition named both the mother and the respondent father and some of the facts alleged in support of the neglect allegations related to the father. A hearing on the order of temporary custody was scheduled for April 24, 1998, but was continued until May 22, 1998, at the request of the father. Subsequently, the commissioner moved to consolidate the hearing on the neglect petition with the hearing on the order of temporary custody, and the trial court granted the commissioner's motion over the father's objection.[1]

---

[1] In his preliminary statement of issues, the father lists as an issue the propriety of the trial court's granting of the commissioner's motion to consolidate the hearings. We note that the father did not provide this court with

At the hearing, the mother, the custodial parent, entered a nolo contendere plea to the neglect petition. Before accepting the mother's plea, the trial court determined that the mother understood the content and consequences of her plea,[2] namely, that she was giving up her right to a trial. After finding that the mother's plea was entered into knowingly and voluntarily, the court concluded that "a factual basis exists to support the neglect allegation, and adjudication may enter." Counsel for the father objected, stating that the father wanted to enter a denial and to have a trial on the issue of neglect.[3] The trial court denied the father's request because the father was a noncustodial parent and the

any substantive discussion of that issue or citation to legal authority in his brief. Issues not briefed are deemed abandoned. *Krondes* v. *Norwalk Savings Society*, 53 Conn. App. 102, 116 n.10, 728 A.2d 1103 (1999).

[2] Practice Book § 33-1 (c) provides: "A written plea of nolo contendere signed by the respondent may be accepted by the judicial authority. Before accepting an admission or plea of nolo contendere, the judicial authority shall determine whether the right to counsel has been waived, and that the parties understand the content and consequences of their admission or plea. If the allegations are admitted or the plea accepted, the judicial authority shall make its finding as to the validity of the facts alleged in the petition and may proceed to a dispositional hearing."

[3] The following colloquy transpired between the court and the father's counsel.

"The Court: He denies that the child is neglected, pursuant to his own initiation?

"[Attorney for the Respondent Father]: Certainly, nothing that he did was neglect, and that he could care for the child.

"The Court: We're not here—let's define the issue. The child—the state of the child being neglected has been adjudicated by the custodial parent. That has no responsibility, at all, with the noncustodial parent. He has not—it is—what you're asking—what are you objecting to? That he wants to admit or deny? What does he want to do?

"[Attorney for the Respondent Father]:We would, then, want to enter a denial and have a trial on the adjudication, Your Honor.

"The Court: Adjudication of what?

"[Attorney for the Respondent Father]: That my client has done nothing to neglect the child, and, in fact, has moved to protect the child from neglect.

"The Court: That's noted for the record. That has no bearing on the adjudication of the child being neglected based upon the allegations obtained in the petition as it pertains to the custodial parent. . . ."

custodial parent had entered a plea of nolo contendere,[4] and because the father was not contesting the status of the child as being neglected but was arguing that he did nothing to neglect the child. The trial court ruled that no further adjudication was necessary and noted that the father had done nothing to neglect the child.

Although he was given an opportunity to be heard on the issue of disposition, the father chose to assert his alleged constitutional right to remain silent.[5] The court ordered that the child be committed to the custody of the commissioner for a period of twelve months. Neither parent objected to the court's ruling that the child be committed to the custody of the commissioner. The father remained a noncustodial parent at the end of the hearing and was advised by the court that in the future he could be considered as a custodial resource for his son. The respondent father appeals from the adjudication of neglect.

---

[4] Practice Book § 33-1 (b) provides: "Notwithstanding any prior statements acknowledging responsibility, the judicial authority shall inquire whether the allegations of the petition are presently admitted or denied. This inquiry shall be made of the *custodial parent* in neglect, uncared for or dependent matters; and of all appearing parents in termination matters." (Emphasis added.)

[5] The father filed a pleading entitled "Invocation of Right to Remain Silent," which states that the father "is hereby invoking his right to remain silent as guaranteed by the Fifth Amendment to the United States Constitution, the Seventeenth Article of the Connecticut Constitution, Connecticut General Statutes § 46b-137, and [Practice Book] § 10.48.1." At the dispositional phase of the hearing, the trial court asked the father's counsel if he had any objection to the court's admitting as an exhibit a social study that recommended that the child be committed to the care and custody of the commissioner for a period not to exceed one year. The father's counsel stated that he had no objection. The attorney for the commissioner then stated:

"[Attorney for the Commissioner]: Your Honor, may I just call to your attention that the facts that are supporting the father's section, page 6 [of the social study] indicates his intent to . . . exercise his right to remain silent . . . .

"The Court: His right to remain silent?

"[Attorney for the Commissioner]: [Yes.]

"[Attorney for the Respondent Father]: There is a termination pending in another case, Your Honor. We have invoked that right to remain silent."

We first address the state's claim that the record is inadequate for appellate review. The record does not contain either a written memorandum of decision or a transcribed copy of an oral decision signed by the trial court stating its reasons for adjudicating the child neglected and committing him to the custody of the commissioner. See Practice Book § 64-1. The duty to provide this court with a record adequate for review rests with the appellant. Practice Book § 60-5; *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 607, 710 A.2d 190 (1998). We will review these claims, however, to the extent necessary for our disposition of the appeal because we can determine the trial court's reasoning and the relevant facts from the hearing transcript. See *In re Todd G.*, 52 Conn. App. 676, 679 n.5, 727 A.2d 799 (1999).

Before considering the father's claims of error, we must determine whether we have jurisdiction to hear this case.[6] "Mootness deprives this court of subject matter jurisdiction. *Loisel* v. *Rowe*, 233 Conn. 370, 378, 660 A.2d 323 (1995); *First Trust National Assn.* v. *Hitt*, 36 Conn. App. 171, 174, 649 A.2d 798 (1994). The test for determining mootness is not '[w]hether the [respondent] would ultimately be granted relief . . . . The test, instead, is whether there is any practical relief this court can grant the appellant.' " *In re Corey E.*, 40 Conn. App. 366, 369, 671 A.2d 396 (1996). "[T]he existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *Sgarellino* v. *Hightower*, 13 Conn. App.

---

[6] The commissioner claims that the respondent father has not shown a "direct aggrievement" and that, therefore, "[t]he Appellate Court should deny his appeal." We do not consider this claim in view of our disposition of this case.

591, 594, 538 A.2d 1065 (1988). Therefore, the dispositive question is what, if any, actual relief could be granted the father by this court.

The commissioner claims that there is no practical relief that this court can grant the father because the law does not require a trial court to determine that the parent or parents committed a neglectful act, but only whether the child is neglected as defined by the statute. See General Statutes § 46b-120 (8). Basically, the commissioner claims that we can provide no practical relief to the father because even if he were to succeed in this appeal, the status of the child would not change. The mother entered, and the trial court accepted, a nolo contendere plea to the neglect allegations, resulting in the child's being adjudicated neglected. The father does not challenge the status of the child as being neglected and he does not challenge the disposition and commitment of the child to the custody of the commissioner. Therefore, according to the commissioner, we should dismiss the father's appeal as moot.

The father claims that there is relief that this court can grant him. He claims that because he was named as the child's father in the neglect petition, the adjudication of neglect applies to him and, therefore, he has a right to be heard and contest the adjudication. He further claims that a trial court must determine *who* was responsible for the neglect before it can proceed to disposition because a child's neglect by a custodial parent cannot justify the state's removal of the child from a noncustodial parent's guardianship. According to the father, if we reverse the judgment and remand for a new hearing on the adjudication of neglect, and if on remand the court fails to find him responsible for the neglect, the case would end with the adjudicatory phase and would not proceed to the dispositional phase and his status as guardian of his child would not change.

The father misinterprets the purpose of the adjudicatory phase of a neglect proceeding and the effect of an adjudication of neglect. A neglect petition is sui generis and, unlike a complaint and answer in the usual civil case, does not lead to a judgment for or against the parties named. Neglect proceedings, as do termination of parental rights cases, consist of two phases: adjudication and disposition. In the adjudicatory phase, the trial court must determine if the child is neglected. A neglected child is defined as a child who "(A) has been abandoned or (B) is being denied proper care and attention, physically, educationally, emotionally or morally or (C) is being permitted to live under conditions, circumstances or associations injurious to his well-being or (D) has been abused . . . ." General Statutes § 46b-120 (8). Section 46b-129 (j) governs petitions for adjudication of neglected children and the commitment of their custody and provides that "[u]pon finding and adjudging that *any child or youth is* uncared-for, neglected or dependent, the court may commit him to the Commissioner of Children and Families . . . ." (Emphasis added.)

The father concedes that the statutes governing neglect proceedings do not expressly require a finding of parental fault in order to establish the child's status as neglected but he nevertheless claims that other statutes, when read in conjunction with the statutes governing neglect proceedings, support his proposition. This claim is without merit.

Our review of the relevant statutes leads us to conclude that an adjudication of neglect relates to the status of the child and is not necessarily premised on parental fault. A finding that the child is neglected is different from finding who is responsible for the child's condition of neglect. Although § 46b-129 requires both parents to be named in the petition, the adjudication of neglect is not a judgment that runs against a person or persons so named in the petition; "[i]t is not directed against

them as parents, but rather is a finding that the children are neglected . . . ." *In re Elisabeth H.*, 45 Conn. App. 508, 511, 696 A.2d 1291, cert. denied, 243 Conn. 903, 701 A.2d 328 (1997); see also *In re Jessica S.*, 51 Conn. App. 667, 672, 723 A.2d 356 (1999) (parent need not have custody to be named in neglect petition and for court to adjudicate child neglected).

The father in this case was named in the neglect petition for statutory reasons and for dispositional purposes. He had a right to participate in the adjudicatory phase to contest whether the child was neglected, and in the dispositional phase to propose a plan for the best interests of his son. He did not contest the fact that his child was neglected by the custodial mother. Once the trial court adjudicated the child neglected and proceeded to disposition, the father could have offered a dispositional plan and requested custody of the child.[7] Instead, he chose to remain silent and did not contest the commitment of the child to the commissioner. He cannot now be heard to complain that the state removed him as guardian of his child without affording him an opportunity to be heard and contest the child's disposition.

Given the statutory framework for a neglect proceeding, procedurally, there is no way this court can afford the father the relief he seeks. We note that a parent is a

---

[7] We note that "[w]hile an adjudication of neglect may lead to removal of a child from parental custody pending investigation and resolution of the child's circumstances, removal is only one of a number of possible dispositions after a finding of neglect. Thus, even after a finding of neglect, the child may remain with his or her parents under protective supervision." *In re Juvenile Appeal (84–AB)*, 192 Conn. 254, 263, 471 A.2d 1380 (1984). Pursuant to § 46b-129 (d), the Superior Court has three possible options from which to chose regarding custody of a child found to be neglected: (1) commit the child to the commissioner of children and families; (2) vest guardianship of the child in a third party until the child reaches the age of eighteen; or (3) permit the natural parent or guardian to retain custody and guardianship of the child with or without protective supervision.

legally necessary party in a neglect proceeding; General Statutes § 46b-129 (a); see also *In re Jonathan P.*, 23 Conn. App. 207, 212, 579 A.2d 587 (1990); and has a statutory right of confrontation and cross-examination in such proceedings; General Statutes § 46b-135 (b); and to produce witnesses on behalf of any dispositional plan the parent may want to offer. Practice Book § 33-7. The statutes and rules of practice, however, do not afford a parent in a neglect proceeding the right to require the trial court to adjudge each parent's blameworthiness for a child's neglect. In fact, the rules specifically limit inquiry in the adjudicatory phase to the custodial parent in neglect proceedings and to *all* appearing parents in termination proceedings. Practice Book § 33-1 (b). The rules allow the very procedure the father claims was improper. A court may proceed to disposition once the court has accepted a nolo contendere plea and has made a finding of neglect. Furthermore, the father did not seek to exercise his rights to contest the finding of neglect, nor did he exercise those rights at trial during the dispositional phase when the actual determination was made to transfer guardianship of the child to the commissioner. Instead, he seeks a remedy for which the law does not provide, namely, to establish that the child was not neglected *by him.*

The father's rights concerning his child were affected by the disposition and the commitment of the child to the custody of the commissioner, and not by the adjudication that the child was neglected. The adjudication is unrelated to the issue of who is responsible for the child's condition. Because he does not claim that the child was not neglected or contest the child's disposition, we can discern no practical relief that we could afford the father. Accordingly, the father's appeal is moot.

The appeal is dismissed as moot.

In this opinion the other judges concurred.