[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION: INTERVENERS' MOTION TO DISMISS MOTIONS FOR PSYCHOLOGICAL EVALUATION
 I
On June 11, 1999, the commissioner of the department of children and families (DCF) filed a neglect and uncared for petition on behalf of Joshua S., born on April 3, 1999. The petition alleges that on June 10, 1999, Kelly S., the biological mother of then two-month-old Joshua, brutally killed the child's father, Charles S., and two of his siblings. Jennifer and Jonah S. Kelly S. then set the family home on fire and committed suicide. Hartford Hospital and the East Hartford Police Department immediately requested that DCF intervene to address the needs of the surviving family members. Joshua's half-sibling. Jessica M., stabbed repeatedly and doused with gasoline by Kelly S., underwent surgery and survived the incident. Joshua, in critical condition and suffering from smoke inhalation, was rushed to the burn unit at Massachusetts General Hospital.
The petition alleges that although numerous relatives and friends of Joshua quickly contacted DCF offering to care for Jessica and Joshua, the department needed more time to assess these various persons' relationships to the children and their ability to provide safe and proper care. On June 11, 1999, this court entered an order of temporary custody of Joshua in DCF. The court found Joshua was suffering from serious physical injury and was in immediate physical danger form his surroundings. On June 18, 1999, the court sustained that order at a preliminary hearing CT Page 14099 held pursuant to General Statutes § 46b-129 (d). After a period of hospitalization, Joshua was placed in a foster home investigated and approved by DCF.
Subsequent to the tragic incidents of June 10, 1999, it was determined that Joshua's mother and father, Kelly and Charles S., in mirror wills dated August 20, 1998, named their minister and his wife, Chad and Sara P., as Joshua's testamentary co-guardians.
On July 28, 1999, this court granted two motions to intervene in the dispositional phase of Joshua's neglect proceeding: one filed by Chad and Sara P. and the other by Joshua's current foster parents, Aldo and Lisa V. On that same date, by agreement of all parties, including the interveners, the court adjudicated Joshua a neglected and uncared for child on the basis of the allegations of the petition. (T., 7/28/99, p. 4).[1]
Subsequently, the Probate Court for the District of East Hartford held a contested hearing on applications to admit the wills of Charles and Kelly S. In decisions dated September 30 and October 8, 1999, that court ruled on the applications, admitted the wills to probate and appointed Attorney Frank A. Leone as administrator and fiduciary.[2]
Because both the wills name Chad and Sara P. as Joshua's proposed testamentary co-guardians, they have moved for a dismissal of Joshua's neglect petition. Their claim is that the Superior Court for Juvenile Matters has no jurisdiction over the subject matter of the appointment of Joshua's permanent guardian. It is their position that the existence of a valid will naming them as testamentary co-guardians confers exclusive jurisdiction on the Probate Court.
Practice Book Section 10-31(a) permits a motion to dismiss to assert lack of jurisdiction over the subject matter. Any claim of lack of jurisdiction over the subject matter cannot be waived, and whenever it is found after suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the judicial authority shall dismiss the action. BaldwinPiano Organ Co. v. Blake, 186 Conn. 295, 297, 441 A.2d 183
(1982).
 "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what CT Page 14100 form it is presented . . . And the court must fully resolve it before proceeding further with the case. . . . Castro v. Viera, 207 Conn. 420, 429, 541 A.2d 1216 (1988). The question of whether the court has such jurisdiction, however, must be informed by the established principle that every presumption is to be indulged in favor of jurisdiction. Lauer v. Zoning Commission, 200 Conn. 455, 460, 600 A.2d 310 (1991).State v. Carey, 222 Conn. 299, 305, 610 A.2d 1147 (1991), on appeal after remand, 228 Conn. 487, 636 A.2d 840 (1994)." (Internal quotation marks omitted). State v. Mack, 55 Conn. App. 232, 236, ___ A.2d ___ (1999).
The standard of review of a motion to dismiss requires the court to take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a maimer most favorable to the plaintiff.Pamela B. v. Ment, 244 Conn. 296, 308, 709 A.2d 1089 (1998); Taftv. Wheelabrator Putnam, Inc., 55 Conn. App. 359, 362, ___ A.2d. ___ (1999).
Chad and Sara P. claim that Bristol v. Brundage,24 Conn. App. 402, 589, 589 A.2d 1 (1991), confers exclusive jurisdiction of the issue of a guardian for Joshua on the Probate Court because the parents' wills provided for the appointment of them as testamentary guardians. Bristol v. Brundage involved an appeal from a Probate Court decision involving a contested guardianship case between the brother and mother of a deceased. The will had named the brother as guardian of the person and estate of a surviving minor child. The Probate Court determined the will provision was non-binding and instead, named the warring parties as co-guardians. The Appellate Court addressed the provisions of General Statutes § 45a-596 that "[t]he surviving parents of any minor may by will appoint a person or persons who shall be guardian or co-guardians of the person of such minor, a guardian or co-guardians of the estate or both," and held that 45a-596 (a) should be interpreted as mandating the appointment of the parent's testamentary choice of a guardian because it should be presumed that the best interests of the child are served by that appointment. The testamentary guardian is conferred an initial advantage over all other potential guardians because he or she is named in the will. However, this presumption may be rebutted by a showing that it would be detrimental to the child to permit the named testamentary guardian to serve. Bristol v. Brundage, supra,24 Conn. App. 406. CT Page 14101
The court acknowledges that whatever forum ultimately determines who should be the guardian of Joshua, the named testamentary co-guardians are entitled to claim the benefit of the presumption determined by Bristol v. Brundage. Where the court disagrees with Chad and Sara P. is their argument that the death of Joshua's parents removes this matter from the jurisdiction of this court as the perpetrator of the abusive acts and biological mother, Kelly S., and the biological father, Charles S. are deceased. This argument ignores the primary focus of the child protection statutes. The paramount concern is to ensure the future health and safety of the neglected or uncared for child in a permanent, nurturing environment. General Statutes § 17a-101(a); In re Christine F., 6 Conn. App. 360, 368,505 A.2d 734, cert. denied, 199 Conn. 808, 508 A.2d 769 (1986). It was not only the parents' deaths, but also the violent incidents which occurred prior to their deaths, that caused Joshua's neglected and uncared for conditions.
The position of Chad and Sara P. misinterprets the purpose of the adjudicatory phase of a neglect proceeding and the effect of an adjudication of neglect.
 "A neglect petition is sui generis and, unlike a complaint and answer in the usual civil case, does not lead to a judgment for or against the parties named. . . . An adjudication of neglect relates to the status of the child and is not necessarily premised on parental fault. A finding that the child is neglected is different from finding who is responsible for the child's condition of neglect. Although 46b-129 requires both parents to be named in the petition, the adjudication of neglect is not a judgment that runs against a person or persons so named in the petition; `[i]t is not directed against them as parents, but rather is a finding that the children are neglected. . . .' In re Elisabeth H., 45 Conn. App. 508, 511, 696 A.2d 1291, cert. denied, 243 Conn. 903, 701 A.2d 328 (1997); see also In re Jessica S., 51 Conn. App. 667, 672, 723 A.2d 356
(1999). . . . ." In re David L., 54 Conn. App. 185, 192, ___ A.2d ___ (1999).
The Connecticut Supreme Court, in In re Juvenile Appeal(85-BC), 195 Conn. 344, 488 A.2d 790 (1985), determined that the Superior Court has exclusive jurisdiction over matters concerning guardianship arising under General Statutes § CT Page 1410246b-129, where the child or youth is adjudged uncared for, neglected or dependant. In that case, the Supreme Court ruled that the Probate Court does not possess jurisdiction to adjudicate custody-guardianship matters that arise under § 46b-129. The P.s do not dispute that as a result of the acts of Kelly S., Joshua was injured and rendered homeless. The emergency created by the actions of Kelly S. necessitated the filing of the DCF petition. In fact, having moved and been permitted to intervene only in the dispositional phase of this proceeding, the P.s would have no standing to contest the neglect and uncared for adjudication. In re Baby Girl B., 224 Conn. 263,274-278, 618 A.2d 1 (1992).
This case was pending in the Superior Court prior to any action being initiated in the Probate Court. This court already has adjudicated Joshua a neglected and uncared for child. What remains to be decided occurs in the dispositional phase of the neglect proceeding. In this phase, the court must afford the P.s the statutory presumption afforded them under Bristol v. Brundage
Those parties opposing their appointment will have the burden of rebutting that presumption. The choice of tribunal does not change the nature of the proceeding. "[T]he ultimate effect of a custody-guardianship vested by the Superior Court in a "suitable and worthy" third party pursuant to § 46b-129(d) may be identical to that rendered by an appointment of guardianship made by the Probate Court." In re Juvenile Appeal (85-BC), supra,195 Conn. 365.[3] A trial in the Superior Court for Juvenile Matters on the issue of Joshua's guardianship will not deprive the P.s of any substantial rights they would be afforded in the Probate Court. See Kolodney v. Kolodney, 2 Conn. App. 697,699-700, 483 A.2d 622 (1984).
In deciding this case, the court will have several options. It can appoint the P.s as co-guardians or appoint the V.s as co-guardians. If the court deems neither the P.s nor the V.s are suitable, or if the court prefers to effectuate an adoption by the V.s or the P.s, it can appoint DCF as statutory parent for Joshua and order DCF to arrange his adoption.[4] These same options are available in both the Superior and Probate Courts, however one frames the proceeding statutorily.[5]
Further, the choice of the Superior Court as the tribunal, does accomplish, for Joshua, an expedited consideration of this matter. Were the matter to first be decided in the Probate Court, the losing side could appeal to the Superior Court and request a CT Page 14103 trial de novo. This adds one additional layer to potential litigation, consequently increases the costs to all involved, and prolongs Joshua's undeniable need for closure and a permanent home. Our courts have long recognized the deleterious effect of prolonged temporary care and the psychological effects of prolonged proceedings on young children. Time is of the essence.In re Juvenile Appeal (84-CD), 189 Conn. 276, 455 A.2d 1313
(1989); In re Alexander V., 25 Conn. App. 741, 748, 596 A.2d 930
(1992).
For the foregoing reasons, the motion to dismiss is denied.
 II
DCF and the V.s have moved for a psychological evaluation of the P.s. The court hereby grants that motion but further orders an evaluation of the V.s, to which they have agreed to submit. It may be helpful to the ultimate trier of fact to have the assistance of psychological assessments of the proposed guardians for Joshua since their ability to care for him is the issue. Accordingly, the Chad and Sara P. and Aldo and Lisa V. are hereby ordered to submit to psychological examinations, intellectual and clinical, as well an observed interaction with Joshua by the same psychologist. These evaluations shall be paid for by DCF. The interveners, the attorney for the child, and DCF are ordered to confer immediately with Attorney Mary Ann Mierzwa, court service officer, for the purposes of designating a psychologist to conduct the evaluations and agreeing on documentary submissions, issues or questions to be considered by the evaluator. An appropriate order for said evaluation shall be prepared for my signature on or before November 15, 1999.
KELLER, J.