# IN RE MICHAEL L. ET AL.*
## (AC 19431)

Lavery, Schaller and Mihalakos, Js.

Argued October 29, 1999—officially released February 22, 2000

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Raymond J. Rigat*, for the appellant (respondent mother).

*Nina F. Elgo*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Jeffrey W. Minnier*, for the minor children.

*Opinion*

MIHALAKOS, J. The respondent mother[1] appeals from the judgments of the trial court terminating her parental rights with respect to her minor children, M, S and J. On appeal, the respondent claims that (1) the court improperly found that she had failed to achieve sufficient personal rehabilitation within the meaning of General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B),[2]

---

[1] Because of the out-of-state incarceration of the respondent father, the trial court was able to consider only the respondent mother's parental rights. We refer in this opinion to the respondent mother as the respondent.

[2] General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence . . . (3) that over an extended period of time, which except as provided in subsection (d) of this section shall not be less than one year . . . (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

(2) the statutory ground of failure to achieve rehabilitation, as defined by § 17a-112 (c) (3) (B), is unconstitutionally vague on its face and as applied to her, (3) the court violated her constitutional rights when it terminated her parental rights but continued the termination of the parental rights trial as to the children's father, and (4) the agreement of the respondent's trial counsel to proceed with the trial amounted to ineffective assistance of counsel. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to this appeal. The respondent was raised in Pennsylvania where, at age eighteen, she met the children's father, who was a drug dealer. Both admitted to using drugs from the outset of their relationship. On July 27, 1991, following their arrest for conspiracy to commit retail theft, M was born. After the father had served time in jail, he was arrested again on drug charges. While the charges concerning the retail theft were still pending against her, the respondent became a fugitive when she fled to Puerto Rico with the father. S subsequently was born, and the respondent and her children left Puerto Rico to live with the father's niece in Waterbury. The father joined them soon thereafter.

On October 28, 1994, J was born with biliary atresia, a chronic and life threatening disease of the liver. While living in Waterbury, the respondent and the father allowed their children to live in unhealthy conditions. S was found wandering in the street, and the children had rashes and infectious sores and were filthy and poorly clothed. There were continual problems with M's attendance at school. While the respondent did accept treatment for her substance abuse, both the respondent and the father continued to abuse drugs.

In May, 1995, the department of children and families (department) became involved when seven referrals

were made to it by neighbors and the service providers. The referrals involved allegations of drug abuse by both parents, educational neglect, noncompliance with the services, domestic violence and overall neglect. On December 27, 1995, neglect petitions were filed by the commissioner of children and families (commissioner).

On February 2, 1996, orders of temporary custody were granted. When the children arrived in foster care, they were in deplorable condition. J's bottle was filled with sour milk, his diaper was filled with feces and urine, he had a severe diaper rash covering his buttocks and his inner thighs were bleeding. S was wearing no undergarments and her sneakers were soaked with urine.

While in foster care, the children displayed numerous severe behavioral problems. They were abusive toward one another, often would swear and spit, had poor table manners and S would masturbate constantly, both at home and in public places. After eight months in foster care, many of these behaviors subsided but would return following visits with the respondent.

At the end of 1996, the respondent was extradited to Pennsylvania, where she subsequently was sentenced as a fugitive. On February 24, 1997, the department placed both S and M in Pennsylvania with the maternal grandmother. J, who required special medical care, remained in foster care. Following the respondent's release from prison, a dispute arose with the maternal grandmother, who demanded that the children be returned to Connecticut. The children then returned to their original foster home in Connecticut while the respondent remained in Pennsylvania. According to the children's therapist, Kym Crowne, the children were traumatized by the thought that they would be returned to the respondent.

While the respondent claims that she only occasionally used drugs, she tested positive for illegal substances several times. She also was inconsistent in attending substance abuse programs and never followed through with programs offering her individual counseling. Following her extradition to Pennsylvania, however, the respondent voluntarily began participating in bible study programs and visited her children.

On March 17, 1998, the commissioner filed petitions for termination of parental rights of the respondent and the father. On February 2, 1999, the court terminated the respondent's parental rights as to all three children, and the commissioner was granted orders of temporary custody for them. The present appeal followed. Additional facts and procedural history will be discussed where relevant to issues in this appeal.

I

The respondent's principal claim is that the court's decision to terminate her parental rights pursuant to § 17a-112 (c) (3) (B)[3] was clearly erroneous. We disagree.

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Galen F.*, 54 Conn. App. 590, 594, 737 A.2d 499 (1999).

"Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review.

---

[3] See footnote 2.

The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . *United Components, Inc.* v. *Wdowiak*, 239 Conn. 259, 263, 684 A.2d 693 (1996)." (Internal quotation marks omitted.) *In re Jessica S.*, 51 Conn. App. 667, 674–75, 723 A.2d 356, cert. denied, 251 Conn. 901, 738 A.2d 1090 (1999). Having reviewed the evidence presented at trial, we conclude that the court's decision with regard to the respondent's failure to achieve sufficient personal rehabilitation and its termination of her parental rights was not clearly erroneous.

The court found by clear and convincing evidence that the respondent had failed to achieve the requisite personal rehabilitation under § 17a-112 (c) (3) (B). "Section 17a-112 [(c) (3) (B)] requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time." (Internal quotation marks omitted.) *In re Tricia A.*, 55 Conn. App. 111, 115, 737 A.2d 974 (1999). The failure to achieve rehabilitation must be proven by clear and convincing evidence. Clear and convincing evidence is something more than preponderance of the evidence, required in neglect proceedings and in other civil cases, but something less than proof beyond a reasonable doubt, required in criminal cases. *In re Michael M.*, 29 Conn. App. 112, 118 n.6, 614 A.2d 832 (1992). "Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." (Inter-

nal quotation marks omitted.) *In re Hector L.*, 53 Conn. App. 359, 366, 730 A.2d 106 (1999).

The respondent argues that she had made progress toward personal rehabilitation through her religious work and in finding employment on her own as a waitress prior to being extradited to Pennsylvania. There was, however, sufficient evidence presented at trial showing that the respondent failed to make progress in her personal rehabilitation. Specifically, the respondent had been a drug user since she was an adolescent, was inconsistent in attending substance abuse programs and never followed through with programs offering her individual counseling and intensive parent training. Furthermore, after accepting treatment for substance abuse, the respondent continued to use drugs.

Section 17a-112 (c) (3) (B) also provides that a respondent's rehabilitation must be foreseeable within a reasonable time, given the needs of the particular child. *In re Luis C.*, 210 Conn. 157, 167, 554 A.2d 722 (1989). What is a reasonable time is a factual determination that must be made on a case-by-case basis. *In re Shannon S.*, 41 Conn. Sup. 145, 154, 562 A.2d 79, aff'd, 19 Conn. App. 20, 560 A.2d 993 (1989). This court rejected a claim similar to that raised by the respondent in this case in *In re Christina V.*, 38 Conn. App. 214, 218–22, 660 A.2d 863 (1995), holding that mere employment, an increase in child visitation and apparent freedom from substance abuse was not enough to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable period of time the respondent could assume a responsible position under § 17a-112 (c) (3) (B). While the respondent contends that she has made progress in her personal rehabilitation, such as by visiting her children, these visits were not productive enough to establish and maintain stable parent-children relationships. We conclude that the court's findings are not clearly erroneous and support

the fact that the respondent has not achieved personal rehabilitation.

During the dispositional phase of the hearing, evidence must be clear and convincing that the continuation of the respondent's parental rights is not in the children's best interests. In this case, there was evidence showing that reuniting the respondent with her three children would be detrimental to their development. For example, M was traumatized by the prospect of reunification with the respondent, while S was institutionalized after one telephone call with the respondent. Furthermore, J, who requires special medical attention, has done well with the care provided from his foster mother. With regard to the children's needs, considering J's special medical condition and the emotional conditions of S and M, the respondent has not stabilized herself to the point where she has achieved sufficient rehabilitation to satisfy the requirements of § 17a-112 (c) (3) (B) that she be a responsible parent to her three children.

Considering all the evidence elicited at trial, including the respondent's drug use, it was not foreseeable that she could assume a responsible position in the lives of her children within a reasonable time. As a result, the court properly found that the respondent had failed to achieve sufficient rehabilitation within the meaning of § 17a-112 (c) (3) (B). We are not persuaded, therefore, that the court's findings were clearly erroneous.

II

The respondent next claims that the statutory ground of failure to achieve rehabilitation, as defined by § 17a-112 (c) (3) (B), is unconstitutionally vague on its face and as applied to her.

"The doctrine [of vagueness] requires statutes to provide fair notice of the conduct to which they pertain

and to establish minimum guidelines to govern law enforcement. *State* v. *Indrisano*, 228 Conn. 795, 802, 640 A.2d 986 (1994)." (Internal quotation marks omitted.) *State* v. *Bell*, 55 Conn. App. 475, 481, 739 A.2d 714, cert. denied, 252 Conn. 908, 743 A.2d 619 (1999). Our Supreme Court has stated that "[t]he degree of specificity that due process requires of civil statutes is less than that demanded of criminal statutes." *Packer* v. *Board of Education*, 246 Conn. 89, 113, 717 A.2d 117 (1998). In *State* v. *Indrisano*, supra, 802–803, the court outlined the guidelines of the vagueness doctrine as set forth by our Supreme Court. "The purpose of the vagueness doctrine is twofold. The doctrine requires statutes to provide fair notice of the conduct to which they pertain and to establish minimum guidelines to govern law enforcement. The United States Supreme Court has set forth standards for evaluating vagueness. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. . . . Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. . . . Third, but related, where a vague statute abut[s] upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of [those] freedoms." (Citations omitted; internal quotation marks omitted.) Id., 802–803.

The respondent acknowledges that this claim was not raised at trial but maintains that it should be reviewed pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4] While the first two prongs of

[4] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed

*Golding* concern the reviewability of the defendant's claim; the last two prongs go to the merits of the claim. Id. "The appellate tribunal is free . . . to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." Id., 240. "[A] claim of unconstitutional vagueness . . . warrants appellate scrutiny . . . because it implicates the fundamental due process right to fair warning and the record is adequate to facilitate review." (Citation omitted.) *State* v. *Schriver*, 207 Conn. 456, 459, 542 A.2d 686 (1988). We conclude that the respondent's claim fails to satisfy the third prong of *Golding*.

Under the third *Golding* prong, the respondent can prevail only if the alleged constitutional violation clearly exists and clearly deprived her of a fair trial. *State* v. *Golding*, supra, 213 Conn. 240. The question is whether § 17a-112 (c) (3) (B) on its face provides the respondent fair warning so that she knows what conduct is proscribed by the statute and how she could act in accordance with it. In *State* v. *Tucker*, 50 Conn. App. 506, 510, 718 A.2d 979 (1998), appeal dismissed, 248 Conn. 668, 728 A.2d 1097 (1999), the court noted that a statute gives fair warning of what conduct it prohibits if it is "reasonably specific and direct enough so that a person of ordinary intelligence has a reasonable opportunity to govern his or her behavior by reference to the words of the statute together with available judicial gloss." (Internal quotation marks omitted.) Statutes pertaining to termination of parental rights pertain to "a wide variety of conduct, [because] the process of parenting itself is multifaceted and encompasses all of life's activities. In view of the diversity of human nature, backgrounds and capabilities, and the differing aspirations of families in our society, it would be impossible to

to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

delineate specific conduct as acceptable or unacceptable." *State v. Anonymous*, 179 Conn. 155, 164–65, 425 A.2d 939 (1979). In *In re Shyliesh H.*, 56 Conn. App. 167, 181, 743 A.2d 165 (1999), this court concluded that § 17a-112 (c) (3) (B) "as written and as interpreted by the Supreme Court and this court provides fair warning of the conduct necessary for personal rehabilitation . . . ." We therefore conclude that there was no constitutional violation that deprived the respondent of a fair trial.

The respondent further claims that the statute is unconstitutionally vague as applied to her. We disagree. In this case, the respondent not only had the benefit of specified court expectations, but every six months, pursuant to state and federal law, the department provided her notice and an opportunity to be heard with respect to the treatment plans concerning herself and her family.[5] A constitutional violation, therefore, does not clearly exist and the respondent has not been deprived of a fair trial. Accordingly, the respondent's claim of vagueness as to § 17a-112 (c) (3) (B) fails under *Golding*. See id., 177–81.

## III

Next, the respondent claims that the court violated her constitutional right to substantive due process. She alleges that there was no compelling state interest in terminating her parental rights when the rights of the father were left intact. We disagree.

"Although the severance of the parent-child relationship may be required under some circumstances, the United States Supreme Court has repeatedly held that

---

[5] The purpose of the treatment plans was to keep the respondent apprised of the services that were being recommended, her degree of compliance, identification of the current functioning of each of her children, as well as what the permanency plan was for the children, long-term and short-term.

the interest of parents in their children is a fundamental constitutional right that undeniably warrants deference and, absent a powerful countervailing interest, protection." (Internal quotation marks omitted.) *In re Baby Girl B.*, 224 Conn. 263, 279, 618 A.2d 1 (1992). "To support a substantive due process claim, [the respondent] must establish either that the [trial court's] actions were sufficient to [shock] the conscience . . . or were a violation of an identified liberty or property interest protected by the due process clause." (Citations omitted; internal quotation marks omitted.) *D'Amico* v. *Johnson*, 53 Conn. App. 855, 864, 733 A.2d 869 (1999).

Since this claim was not preserved at trial, we review it under *Golding*.[6] As stated in part II of this opinion, this court can dismiss the respondent's claim if any one of the four *Golding* prongs are not satisfied. *State* v. *Golding*, supra, 213 Conn. 239–40. We conclude that the respondent's claim fails the third prong of *Golding*.

The third prong of *Golding* states that the alleged constitutional violation clearly exists and clearly deprived the respondent of a fair trial. Id., 240. The facts presented in this case fail to meet the standard for violation of substantive due process. The court's finding, made by clear and convincing evidence, clearly showed that there existed a compelling state interest in termination of the respondent's parental rights. As stated previously, there was clear and convincing evidence that contact with the respondent would be detrimental to her children and, therefore, the court's decision to terminate her parental rights does not "shock the conscience." (Internal quotation marks omitted.) *D'Amico* v. *Johnson*, supra, 53 Conn. App. 864. Furthermore, there is no authority to support the claim that the respondent has a fundamental right to maintain her parental rights where the father's rights

[6] See footnote 4.

have not been terminated. In fact, General Statutes (Rev. to 1997) § 17a-112 (h) provides that "[i]f the parental rights of only one parent are terminated, the remaining parent shall be the sole parent and, unless otherwise provided by law, guardian of the person." The statute clearly contemplates the situation when the rights of only one parent have been terminated. The court, therefore, committed no constitutional violation when it terminated only the respondent's parental rights. Accordingly, this claim fails the third prong of *Golding.*

## IV

The respondent's final claim is that her trial counsel's agreement to proceed with the trial without the participation of the children's father amounted to ineffective assistance of counsel. We disagree.

The standard for ineffective assistance of counsel in termination of parental rights cases was articulated in *State* v. *Anonymous*, supra, 179 Conn. 160, which held that "[t]he range of competence . . . requires not errorless counsel, and not counsel judged ineffective by hindsight, but counsel whose performance is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in [that particular area of the] law. *State* v. *Barber*, 173 Conn. 153, 155, 376 A.2d 1108 (1977); *State* v. *McClain*, 171 Conn. 293, 301, 370 A.2d 928 (1976)." (Internal quotation marks omitted.) In addition, the respondent must show that counsel's "lack of competency contributed to the termination of parental rights." *State* v. *Anonymous*, supra, 160.

In this case, the respondent has not articulated any legal authority for her claim nor has she shown how the alleged incompetency of her trial counsel contributed to the termination of her parental rights. We decline to undertake appellate review of claims where there is

no reasoned legal argument nor any citation to legal authority. See *State* v. *Hernandez*, 204 Conn. 377, 382, 528 A.2d 794 (1987). Review of the respondent's ineffective assistance of counsel claim is declined.

The judgments are affirmed.

In this opinion the other judges concurred.

