IN RE JOSEPH W., JR., ET AL.*
(SC 18660)

Rogers, C. J., and Palmer, Zarella, Eveleigh and Lavine, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued February 8—officially released June 28, 2011

*Jane R. Rosenberg*, assistant attorney general, with whom were *Tammy Nguyen-O'Dowd*, assistant attorney general, and, on the brief, *George Jepsen*, attorney general, *Richard Blumenthal*, former attorney general, *Susan T. Pearlman* and *Benjamin Zivyon*, assistant attorneys general, for the appellant (petitioner).

*David J. Reich*, for the appellee (respondent father).

*David B. Rozwaski*, for the appellee (respondent mother).

*Opinion*

ROGERS, C. J. The primary issue in this certified appeal is whether a noncustodial parent is entitled to contest a neglect petition. We answer that question in the affirmative.

The respondent mother, Karin H., and the respondent father, Joseph W., are the parents of Joseph W., Jr., and Daniel W. (children). The petitioner, the commissioner of children and families (commissioner), filed neglect petitions with respect to both children. At the hearing on the petitions, the mother pleaded nolo contendere and the father did not enter a plea. After the trial court found that the children were neglected and committed them to the custody of the commissioner, the father filed a motion to open the adjudication of neglect on the ground that he should have been permitted to enter a plea at the neglect proceeding. The trial court denied the motion to open, but also ruled that the father would be permitted to contest the issue of whether the children were neglected in the proceeding to terminate

the respondents' parental rights, provided that he first established that he was a custodial parent.

At the termination proceeding, the trial court found that the father was not a custodial parent and, therefore, could not contest the issue of neglect. The trial court ultimately rendered judgments terminating the respondents' parental rights with respect to both children. The respondents then appealed to the Appellate Court, which reversed the judgments of the trial court on the ground that the trial court improperly had found that the father was not a custodial parent. *In re Joseph W.,* 121 Conn. App. 605, 621–22, 997 A.2d 512 (2010). We then granted the commissioner's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly reverse the trial court's judgment[s] terminating the parental rights of the father and the mother?" *In re Joseph W.,* 297 Conn. 928, 998 A.2d 1195 (2010). We conclude that the father was entitled to contest the neglect adjudication regardless of whether he was a custodial parent and, therefore, we affirm the judgment of the Appellate Court on this alternate ground.

The Appellate Court's opinion sets forth the following facts and procedural history. "Joseph, Jr., was born on July 18, 2005, in Scranton, Pennsylvania. The respondents feared that the department of children and families (department) would take Joseph, Jr., from them because the mother's first child had been committed to the custody of the [commissioner] . . . . Consequently, on the advice of legal counsel, the respondents traveled to Pennsylvania in an attempt to evade the department. The parents were not successful in their attempt to elude the department. On July 21, 2005, three days after his birth, while still in the hospital, Joseph, Jr., was taken into emergency protective custody by the commonwealth of Pennsylvania, to be transferred to the custody of the [commissioner] upon the issuance

of an order of temporary custody. Also on July 21, 2005, the [commissioner] took Joseph, Jr., into custody pursuant to an order of temporary custody and filed a neglect petition, on the basis of the doctrine of predictive neglect,[1] premised on allegations regarding the mother's mental health issues and the father's alleged inability to acknowledge the mother's parenting limitations. Joseph, Jr., has remained in the custody of the [commissioner] throughout the ensuing proceedings leading, ultimately, to this appeal.

"Daniel was born on July 20, 2006, in Waterbury. On the same day, while Daniel was still in the hospital, the [commissioner] took him into custody pursuant to an emergency ninety-six hour administrative hold. See General Statutes § 17a-101g. On July 24, 2006, the [commissioner] filed a neglect petition and sought an order of temporary custody as to Daniel. The custody order was granted on the same day. The allegations of neglect regarding Daniel were essentially the same as those made in the neglect petition regarding Joseph, Jr. As in the case of Joseph, Jr., Daniel has remained in the custody of the [commissioner] throughout the proceedings leading to this appeal." *In re Joseph W.*, supra, 121 Conn. App. 607–609.

On August 2, 2007, a hearing was held on the neglect petitions regarding both children. The father was present, but did not enter a plea. The mother entered a plea of nolo contendere as to the allegations of neglect. "After canvassing the mother, the court, *Wilson, J.*, adjudicated the children neglected pursuant to General

---

[1] See *In re T.K.*, 105 Conn. App. 502, 513, 939 A.2d 9 ("[t]he doctrine of predictive neglect is grounded in the state's responsibility to avoid harm to the well-being of a child, not to repair it after a tragedy has occurred"), cert. denied, 286 Conn. 914, 945 A.2d 976 (2008); *In re Michael D.*, 58 Conn. App. 119, 123, 752 A.2d 1135 ("[o]ur statutes clearly permit an adjudication of neglect based on a potential for harm or abuse to occur in the future"), cert. denied, 254 Conn. 911, 759 A.2d 505 (2000).

Statutes (Rev. to 2007) § 46b-120 (9) (C) and committed the children to the custody of the [commissioner]. Neither respondent appealed from the neglect judgments.

"On November 29, 2007, however, the father filed a motion to open the adjudications of neglect and commitment of the children [pursuant to General Statutes § 52-212],[2] alleging that he had attempted to object to the mother's plea on August 2, 2007, but that the court would not allow him to speak. On May 16, 2008, the court, *Bear, J.*, held an evidentiary hearing on the father's motion to open the adjudications of neglect during which the father testified as to what happened at the earlier neglect proceeding, and the transcript of that hearing was introduced into evidence.[3] On May 30, 2008, the court issued an order denying the father's motion to open the judgments of neglect but indicating that if the father filed a pleading seeking a trial on the issue of whether the children were neglected, then the [commissioner] would have the burden of proving, at

[2] General Statutes § 52-212 (a) provides: "Any judgment rendered or decree passed upon a default or nonsuit in the Superior Court may be set aside, within four months following the date on which it was rendered or passed, and the case reinstated on the docket, on such terms in respect to costs as the court deems reasonable, upon the complaint or written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense."

[3] That transcript reveals that, at the beginning of the hearing, the assistant attorney general representing the commissioner stated that the "mother is going to enter a nolo contendere plea" and "[t]he father is going to be standing silent." Later, the father stated: "This is not what we want but this is what's been inflicted upon us by [the commissioner's] system. This is not what we want." Still later, the trial court warned the father's attorney that "you need to handle [the father]" and stated that it was "losing . . . patience" with him. The father then asked for permission to speak. The court stated: "You cannot speak to me directly. No. You can speak to your attorney and have your attorney address me."

the termination trial,[4] that the children were neglected despite the prior adjudications of neglect.

"On June 16, 2008, the [commissioner] filed a motion asking the court to reconsider its May 30, 2008 order requiring that she prove by a fair preponderance of the evidence that the children were neglected at the trial on the petitions to terminate the respondents' parental rights. On June 24, 2008, pursuant to the court's May 30, 2008 order, the father filed a motion seeking a neglect trial, a motion to clarify and an objection to the [commissioner's] motion for reconsideration. The court, *Bear, J.*, held a hearing on these motions on July 9, 2008. On that date, the court granted the father's motion for a neglect trial but denied the father's other requested relief. At the July 9, 2008 hearing, the court, *Bear, J.*, also found that the father had not stood silent at the August 2, 2007 neglect proceeding and that he did not waive his right to be heard on the neglect matter. The court commented that '[i]f [the father] turns out to have been custodial, then only half of what needed to be done was done with the mother's nolo.' The court also denied the [commissioner's] motion but clarified its May 30, 2008 ruling, explaining that the issue to be determined was whether the father 'was a noncustodial or custodial parent on the date of the filing of each of the [neglect] petitions, since the father's hearing rights in light of the mother's nolo contendere plea would be different depending on his custodial or noncustodial status.'

"Thereafter, on August 20, 2008, the father filed a motion to bifurcate the neglect and termination of parental rights proceedings, to which the [commissioner] objected. On August 21, 2008, the [commissioner] filed another motion asking the court to

---

[4] The commissioner filed petitions to terminate the parental rights of the respondents on December 10, 2007.

reconsider its May 30, 2008 order requiring the [commissioner] to prove at the termination of parental rights hearing that the children had been neglected. By way of a memorandum of decision dated August 25, 2008, the court, *Bear, J.,* denied the father's motion for bifurcation, sustained the [commissioner's] objection to the motion for bifurcation and denied the [commissioner's] motion for reconsideration." Id., 609–11. Specifically, Judge Bear ruled that "[i]f the father is found to be a custodial parent of a child named in such petition on the date of such petition . . . at the consolidated trial [the commissioner will have] the burden of proving by a fair preponderance of the evidence that each such child was neglected or uncared for . . . . If the father is found *not* to be a custodial parent of such child . . . the father's rights are limited . . . and [the commissioner] does *not* have the burden of proving by a fair preponderance of the evidence that such child was neglected or uncared for . . . the mother having previously [pleaded] nolo contendere and the court having adjudicated each child neglected . . . ." (Emphasis in original.)

"On September 4, 2008, the court, *Olear, J.,* commenced the termination hearing, beginning with the issue of whether the father was a custodial parent as of the date that the neglect petitions were filed. The father testified that he was present at the hospital when both Joseph, Jr., and Daniel were born, that he signed acknowledgements of paternity for both children while they were in the hospital and that he was there with them for the duration of their stay in the hospital until they were taken into the custody of the [commissioner] within a few days of their respective births. The father also testified that it was his understanding that he and the mother would raise Joseph, Jr., and Daniel together. After the father testified, the [commissioner] called Kathleen Dayner, a social worker with the department,

to testify. Dayner testified that both parents were considered custodial before the children were taken into the [commissioner's] custody 'because [the parents] were both together.' Following the hearing, the court concluded: '[T]he father today has not produced sufficient evidence to meet his burden of having established that he was a custodial parent as contemplated by the Practice Book and by law, and, furthermore, by Judge Bear's order. So, at this point, I'm not finding the father to have been custodial for purposes of the neglect adjudication being required to be remade.'[5]

"Thereafter, the court granted a motion filed by the [commissioner] to correct [her] petition for termination of the respondents' parental rights and to proceed on the basis of the prior adjudications of neglect. Following an evidentiary hearing, the court, by memorandum of

---

[5] After the father appealed from the judgments of the trial court, the Appellate Court ordered the trial court, *Olear, J.,* "to articulate the legal and factual bases for its conclusion that the father was not a custodial parent at the time that the neglect petitions were filed. In response, the court stated that the '[f]ather, while represented by competent counsel, elected to stand silent at the time of the neglect adjudication and, by doing so, acknowledged being a noncustodial parent.' The court defined the custodian of a minor child as 'the parent or person with whom a minor child resides, at all times or from time to time, and who assumes the responsibility for all or part of the day-to-day care and supervision of the child.' The court found that the father was present at the births of the children; that both children were taken into the custody of the [commissioner] prior to their discharge from the hospital; that the father signed an acknowledgement of paternity for each child; and that, prior to the respective orders for temporary custody, there were no court orders establishing the legal custodian of the children. The court noted the father's failure to introduce any evidence that he and the mother were married, that they resided together or that they intended to reside in the same home with the children upon discharge from the hospital. The court stated that '[t]here was no evidence that [the] father was going to or had prepared to care for his children in his residence at the time the neglect petition was filed or at any foreseeable time in lieu of or in addition to the children being cared for by [the] mother (an acknowledged custodial parent) in her separate residence.' The court concluded that the father failed to 'introduce any evidence to refute [the] mother's acknowledgement, by entering her plea of nolo contendere, that she was a custodial parent.' " *In re Joseph W.,* supra, 121 Conn. App. 617–18.

decision dated October 1, 2008, terminated the respondents' parental rights as to both Joseph, Jr., and Daniel." *In re Joseph W.*, supra, 121 Conn. App. 611–12.

The respondents appealed from the judgments of the trial court to the Appellate Court. A majority of the Appellate Court concluded that the question of whether the father was entitled to enter a plea turned on whether he was a "custodial parent," as that phrase is used in Practice Book (2007) § 35a-1 (b).[6] Id., 616–17. The majority ultimately concluded that, because "[p]arents are joint guardians and have equal and independent rights to their [children's] custody"; id., 620; because there was "no distinction in the custodial status of either parent"; id.; and because both Judge Bear and Judge Olear had presumed that the mother was a custodial parent; id.; "the father enjoyed the same custodial status as the mother at the time the neglect petitions were filed and . . . he was entitled to contest the allegations of neglect." Id., 621. Accordingly, the majority held that "the termination of the respondents' parental rights must be reversed, as the terminations were premised on improper adjudications of neglect."[7] Id.

This certified appeal followed. The commissioner claims on appeal that the majority of the Appellate Court improperly: (1) allowed the father to mount a collateral attack on the adjudication of neglect; (2) placed the burden of proof on the commissioner to prove that the father was not a custodial parent; (3)

_____

[6] "In 2007, Practice Book § 35a-1 (b), subsequently redesignated as Practice Book § 35a-1 (a), provided: Notwithstanding any prior statements acknowledging responsibility, the judicial authority shall inquire whether the allegations of the petition are presently admitted or denied. This inquiry shall be made of the custodial parent in neglect, uncared for or dependent matters; and of all appearing parents in termination matters." (Internal quotation marks omitted.) *In re Joseph W.*, supra, 121 Conn. App. 616–17.

[7] Judge Pellegrino authored a dissenting opinion in which he concluded that the trial court properly had found that the father was not a custodial parent. *In re Joseph W.*, supra, 121 Conn. App. 632–33.

concluded that the father was the children's custodial parent; and (4) reversed the judgment of the trial court terminating the mother's parental rights pursuant to General Statutes § 17a-112 (j) (3) (E) when that statute did not require an adjudication of neglect in a prior proceeding and the mother had not challenged the neglect adjudication on appeal.[8]

After oral argument before this court, we ordered the parties to file supplemental briefs on the question of whether a noncustodial parent can be prohibited from entering a plea in a proceeding to adjudicate whether a child is neglected pursuant to General Statutes (Rev. to 2007) § 46b-120 et seq. when the custodial parent has entered a plea of nolo contendere. In response, the parties filed supplemental briefs in which they all agreed that a noncustodial parent must be allowed to enter a plea in a neglect proceeding to contest the issue of whether the child was neglected, but that a noncustodial parent cannot enter a plea that, although the child was neglected, that parent was not responsible for the neglect. *In re David L.*, 54 Conn. App. 185, 191, 733 A.2d 897 (1999) ("[a] finding that the child is neglected is different from finding who is responsible for the child's condition of neglect"); see id. (whether child is neglected is only issue that can be contested in neglect proceedings). The commissioner argued, however, that the father in the present case was not entitled to enter a plea because he was seeking an adjudication that he was not personally responsible for the neglect of the children. The respondents argued that, to the contrary, the father was entitled to enter a

---

[8] In addition, the commissioner asks this court, if we reverse the judgment of the Appellate Court, to review the merits of the trial court's ruling terminating the respondents' parental rights, an issue that the Appellate Court did not reach because it reversed the judgments on other grounds. Because we affirm the judgment of the Appellate Court, we also need not address this claim.

plea because he was seeking an adjudication that the children were not neglected.

We agree with the parties that a noncustodial parent cannot be prohibited from entering a plea in a neglect proceeding if the parent is seeking to contest the issue of whether the child was neglected. We also conclude that, because the father in the present case was seeking the right to contest the issue of whether the children were neglected, and was not merely seeking a determination that he was not personally responsible for the neglect, he was entitled to enter a plea even if it is assumed that he was a noncustodial parent. We therefore affirm the judgment of the Appellate Court reversing the judgments of the trial court terminating the respondents' parental rights on this alternate ground.[9]

As a preliminary matter, we set forth the applicable standard of review. Whether a noncustodial parent can be prohibited from entering a plea in a proceeding to adjudicate whether a child is neglected pursuant to General Statutes (Rev. to 2007) § 46b-120 (9) et seq. is a question of statutory interpretation subject to plenary review. See *State ex rel. Gregan* v. *Koczur*, 287 Conn. 145, 152, 947 A.2d 282 (2008). "In making such determinations, we are guided by fundamental principles of statutory construction. See General Statutes § 1-2z;[10] *Testa* v. *Geressy*, 286 Conn. 291, 308, 943 A.2d 1075 (2008) ([o]ur fundamental objective is to ascertain and

---

[9] Because we conclude that the father was entitled to enter a plea at the neglect proceeding even if he was a noncustodial parent, we need not address the commissioner's second and third claims on appeal relating to the father's custodial status.

[10] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

give effect to the apparent intent of the legislature . . .)." (Internal quotation marks omitted.) *In re Matthew F.*, 297 Conn. 673, 688, 4 A.3d 248 (2010). To the extent that this case requires us to construe the meaning of Practice Book (2007) § 35a-1 (b), "[t]he interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation." (Internal quotation marks omitted.) *Wiseman* v. *Armstrong*, 295 Conn. 94, 99, 989 A.2d 1027 (2010).

We begin with the language of the governing statutes and rules of practice. General Statutes § 46b-129 (a) provides in relevant part: "Upon the filing of . . . a [neglect] petition . . . the court shall cause a summons to be issued requiring the parent or parents or the guardian of the child or youth to appear in court at the time and place named . . . ." Section 46b-129 (c) provides in relevant part: "The . . . first hearing on a petition filed pursuant to subsection (a) of this section shall be held in order for the court to . . . (4) advise the parent or guardian of the right to a hearing on the petitions and applications . . . [and] (5) accept a plea regarding the truth of such allegations . . . ." Practice Book (2007) § 35a-1 (b) provides in relevant part: "Notwithstanding any prior statements acknowledging responsibility, the judicial authority shall inquire whether the allegations of the petition are presently admitted or denied. This inquiry shall be made of the custodial parent in neglect, uncared for or dependent matters; and of all appearing parents in termination matters." These provisions clearly provide that a custodial parent has the right to enter a plea in a neglect proceeding, and Practice Book (2007) § 35a-1 (b) seems to suggest by implication that the trial court is not *required* to accept a plea from a noncustodial parent. We conclude, however, that these provisions are ambiguous as to whether

a noncustodial parent is *prohibited* from entering a plea.

The Appellate Court addressed this question in *In re David L.*, supra, 54 Conn. App. 186, in which the commissioner filed a neglect petition naming both parents. At the hearing on the petition, the mother, who was the "custodial parent," entered a nolo contendere plea. Id., 187. When the trial court accepted the plea and ordered that an adjudication of neglect would be entered, counsel for the father objected and stated that the father wanted to enter a denial and to have a trial on the issue of neglect. Id. "The trial court denied the father's request because the father was a noncustodial parent and the custodial parent had entered a plea of nolo contendere, and because the father was *not* contesting the status of the child as being neglected but was arguing that *he* did nothing to neglect the child." (Emphasis added.) Id., 187–88.

The father then appealed to the Appellate Court, which concluded that, because a neglect petition is not directed at the conduct of the parents, but at the status of the child, a noncustodial parent is not entitled to enter a plea that the child was neglected, but the parent was not responsible for the neglect. Id., 191–92. The Appellate Court also held, however, that a noncustodial parent *is* entitled in a neglect proceeding to enter a plea that the child was *not* neglected. Id., 192 (noncustodial father "had a right to participate in the adjudicatory phase to contest whether the child was neglected"). Thus, the court clearly believed that the language of Practice Book (1999) § 33-1 (b), which later became Practice Book (2007) § 35a-1 (b), providing that the trial court "*shall inquire* whether the allegations of the petition are . . . admitted or denied . . . *of the custodial parent*"; (emphasis added); did not *prohibit* the trial court from accepting a plea from the noncustodial parent when that parent contested whether the child

had been neglected at all, as opposed to whether the parent had been responsible for the neglect.[11]

Indeed, our research has revealed no case in which a trial court has categorically prohibited a noncustodial parent from entering a plea in a neglect proceeding.[12] In cases in which the commissioner took custody of the child at or shortly after birth, and then sought an adjudication of neglect, both parents have been named as respondents and participated in the neglect proceedings.[13]

[11] We recognize that the Appellate Court in *In re David L.* stated that "the rules [of practice] specifically limit inquiry in the adjudicatory phase to the custodial parent in neglect proceedings . . . ." *In re David L.*, supra, 54 Conn. App. 193. We must conclude, however, that, in light of that court's unequivocal statement that the noncustodial father "had a right to participate in the adjudicatory phase *to contest whether the child was neglected*"; (emphasis added) id., 192; the court was merely recognizing that the rules did not allow a noncustodial parent to plead that he was not responsible for the neglect. Indeed, immediately following its statement that the rules of practice limited inquiry to the custodial parent in neglect proceedings, the Appellate Court stated that "the father did not seek to exercise *his rights to contest the finding of neglect* . . . ." (Emphasis added.) Id., 193. "Instead, he seeks a remedy for which the law does not provide, namely, to establish that the child was not neglected *by him.*" (Emphasis in original.) Id.

[12] Nor has our research revealed any cases that address the question of what constitutes a "custodial parent" for purposes of Practice Book (2007) § 35a-1 (b).

[13] See *In re Valerie D.*, 223 Conn. 492, 499–501, 506, 613 A.2d 748 (1992) (when commissioner took custody of child and filed neglect petition five days after child's birth, both parents were named as respondents; parents were apparently unmarried, but lived together and had another child); *In re Anthony A.*, 106 Conn. App. 389, 391–92 and n.1, 942 A.2d 465 (2008) (when commissioner took custody of child two days after birth and filed neglect petition four days after taking custody, both parents were named as respondents; parents were unmarried and father was incarcerated); *In re T.K.*, 105 Conn. App. 502, 504–505, 939 A.2d 9 (when commissioner took custody of child and filed neglect petition fifteen days after child's birth, both parents were named as respondents and contested neglect allegations; child was parents' first child), cert. denied, 286 Conn. 914, 945 A.2d 976 (2008); *In re Kelly S.*, 29 Conn. App. 600, 602–603 and n.1, 616 A.2d 1161 (1992) (when commissioner took custody of child and granted neglect petition three days after child's birth, both parents were named as respondents); *In re Carl O.*, 10 Conn. App. 428, 430, 523 A.2d 1339 (when commissioner filed neglect petition and ex parte order of temporary custody nine days

Moreover, an interpretation of the rule that prohibited a noncustodial parent from entering a plea would be in conflict with § 46b-129 (c) (4) and (5), which provide, respectively, that, at the first hearing on the neglect petition, the trial court should "advise the parent or guardian of the right to a hearing on the petitions" and "accept a plea regarding the truth of such allegations . . . ." Although the statute refers to "the parent" in the singular, it does not limit the giving of the advice or the acceptance of a plea to custodial parents. When possible, we construe the rules of practice to avoid conflict with statutory provisions. See *Young* v. *Young*, 249 Conn. 482, 495, 733 A.2d 835 (1999).

Most importantly, interpreting Practice Book (2007) § 35a-1 (b) to prohibit noncustodial parents from entering a plea in neglect proceedings would raise serious constitutional questions as applied to an acknowledged noncustodial parent who is present and who wants to enter a plea contesting a neglect finding. For example, a neglect finding can form the basis for a termination of parental rights, which both parents clearly have the right to contest. To compel a parent to stand silent while the child is adjudged as neglected, and then to use that unassailable neglect adjudication[14] as a basis for terminating the parent's parental rights would raise serious questions of due process. This court has a duty to construe Practice Book provisions, whenever possible, to avoid constitutional infirmities. Cf. *Honulik* v. *Greenwich*, 293 Conn. 641, 647, 980 A.2d 845 (2009) ("[t]his court has a duty to construe statutes, whenever

after child's birth, both parents were named as respondents and contested neglect allegations; parents were unmarried and mother had three other children), cert. denied, 204 Conn. 802, 525 A.2d 964 (1987). The question of whether a noncustodial parent is entitled to enter a plea in a neglect proceeding was not expressly raised in any of these cases.

[14] See *In re Stephen M.*, 109 Conn. App. 644, 664, 953 A.2d 668 (2008) ("findings in earlier child welfare proceedings cannot be attacked collaterally in later proceedings").

possible, to avoid constitutional infirmities" [internal quotation marks omitted]).

In light of the foregoing, we conclude that the most reasonable interpretation of Practice Book (2007) § 35a-1 (b), is that it was intended to require the trial court in neglect proceedings to obtain a plea from *at least* the custodial parent and to allow the trial court to adjudicate the issue of neglect even if the noncustodial parent was not known, was not present, or declined to enter a plea. The rule was not intended to *prohibit* a noncustodial parent who is known, who is present and who wants to contest the allegations of neglect from entering a plea. This interpretation is consistent with the Appellate Court's holding in *In re David L.*, supra, 54 Conn. App. 192, that the noncustodial father "had a right to participate in the adjudicatory phase to contest whether the child was neglected . . . ." It also is consistent with the trial courts' past practice of allowing parents who clearly are not custodial in any ordinary sense of the word to contest neglect petitions, a practice that is now expressly reflected in the current revision of the rule, Practice Book § 35a-1 (a),[15] which authorizes the trial courts to accept pleas from both parents. We therefore conclude that noncustodial parents are entitled to enter a plea in neglect proceedings under § 46b-129 (c) and Practice Book (2007) § 35a-1 (b).[16]

We further conclude that, unlike the noncustodial parent in *In re David L.*, the father in the present case

[15] Practice Book § 35a-1 (a) provides in relevant part: "Notwithstanding any prior statements acknowledging responsibility, the judicial authority shall inquire whether the allegations of the petition are presently admitted or denied. This inquiry shall be made of the parent(s) or guardian in neglect . . . matters."

[16] We emphasize that the trial court is not *required* to obtain a plea from a noncustodial parent who is not known, who is not present or who does not want to enter a plea. We conclude only that a noncustodial parent who is present and who wants to enter a plea contesting the allegations of neglect is entitled to do so.

was not seeking an adjudication that, although the children were neglected, he was not personally responsible for the neglect. Indeed, it is difficult to see how the holding of *In re David L.* could ever apply to proceedings in which the department is seeking a neglect adjudication under the doctrine of predictive neglect, since at that point there has been no neglect of the child by either parent. Although, as the court in *In re David L.* properly recognized, there is no reason to allow a noncustodial parent to contest a neglect petition on the irrelevant ground that the noncustodial parent was not aware of the past neglect or was not responsible for caring for the child, there are good reasons to allow a noncustodial parent to enter a plea that, even if the custodial parent might neglect the child in the future if that parent were to retain sole custody, the noncustodial parent would not neglect the child if given custody. Moreover, the father in the present case expressly stated in his request for a neglect trial that "[t]his is not a case where the father is simply contesting whether or not he himself committed any overt act which gave rise to any form of neglect. [The] [f]ather has made it abundantly clear that he contests whether the children can in *any way* be deemed neglected . . . ."[17] (Emphasis in original.) Accordingly, the holding of *In re David*

[17] At the August 2, 2007 neglect hearing, the father had stated that "[w]e never abused nor neglected our children. Our children were taken away at birth on a prediction." The father did not make a claim that, although the mother had neglected the children, he had not.

Because, in the proceedings before Judge Bear, the father disputed the commissioner's claim that he should be barred from entering a plea under *In re David L.*, our review of this issue does not constitute an "ambuscade" of the trial court, even though the father did not raise this claim on appeal. Cf. *Hurley* v. *Heart Physicians, P.C.*, 298 Conn. 371, 379 n.7, 3 A.3d 892 (2010) ("[t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge" [internal quotation marks omitted]). Moreover, the commissioner has suffered no prejudice as the result of the father's failure to raise the issue on appeal because we ordered the parties to submit supplemental briefs on the issue.

*L.*, that a parent may not plead lack of responsibility for a child's past neglect, is inapplicable here. See *In re David L.*, supra, 54 Conn. App. 192–93. We therefore conclude that, having found that the father had not stood silent at the plea hearing or waived his right to enter a plea[18]—findings that the commissioner has not challenged on appeal[19]—Judge Bear should have granted unconditionally the father's motion to open and allowed him to contest the neglect adjudication, regardless of whether he was a custodial parent.[20]

The commissioner contends that, because Judge Bear *denied* the father's motion to open, allowing the father to contest the neglect adjudication constitutes an impermissible collateral attack on the original finding of neglect. See *In re Stephen M.*, 109 Conn. App. 644, 664,

[18] In a June 16, 2008 motion for reconsideration of Judge Bear's initial ruling denying the father's motion to open, but allowing him to file a pleading seeking a trial on the neglect petition, the commissioner argued that "[t]he record from [the] August 2, 2007 [plea] hearing is completely silent as to [the] father wishing to contest the neglect petition. In fact, the only inquiry that the father made at that hearing was to inquire whether the . . . mother was truly in agreement with entering the nolo plea." At the July 9, 2008 hearing on the motion for reconsideration, Judge Bear stated, "[The] [f]ather did not stand silent. The transcript reflects that whatever the father was supposed to do, that was not his understanding and he tried to make that clear to the court from the beginning of the canvass. So whatever may have been thought, the father made it clear he wanted to have his hearing." He further stated that the father "did not waive, and has pursued his right to be heard on the neglect matter."

[19] After Judge Bear issued his ruling in which he found that the father had not stood silent at the neglect proceeding, the commissioner did argue both to Judge Bear and to Judge Olear that, because Judge Bear had denied the father's motion to open, the father should not be allowed to collaterally attack the neglect adjudication. The commissioner did not claim, however, that Judge Bear's finding on July 9, 2008, that the father had not stood silent was clearly erroneous.

[20] We recognize that, by standing silent at the beginning of the hearing on the neglect petitions, the father was partially responsible for creating the procedural confusion in this case. It is important to recognize, however, that the father had a right to change his plea at any time before the neglect proceeding was completed, and that Judge Bear found that he had attempted to do so.

953 A.2d 668 (2008) ("findings in earlier child welfare proceedings cannot be attacked collaterally in later proceedings"). Thus, the commissioner implicitly contends that the father should have appealed immediately from the denial of his motion to open instead of filing a request for a neglect adjudication. See *Norwich* v. *Lebanon*, 193 Conn. 342, 346 n.4, 447 A.2d 115 (1984) (denial of motion to open is appealable final judgment). A review of Judge Bear's order plainly demonstrates, however, that he did not categorically deny the father's motion to open the neglect adjudication. Instead, he permitted the father to file a pleading that potentially could lead to the opening of the neglect adjudication. It is clear, therefore, that Judge Bear's ruling, in which he both denied the father's motion to open the neglect adjudication and allowed the father to contest that adjudication if he could establish that he was a custodial parent, was internally inconsistent.[21] Under these circumstances, we cannot conclude that the ruling was a final appealable judgment under *Norwich* v. *Lebanon*,

[21] Even if Judge Bear had been correct that a noncustodial parent is not entitled to enter a plea in a neglect proceeding, we are aware of no authority for the proposition that the trial court may deny a motion to open a judgment while allowing the moving party to contest the judgment at some later time upon proving that a specific condition is satisfied. If the moving party makes a showing "that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense"; General Statutes § 52-212 (a); the trial court should grant the motion to open. See *Pantlin & Chananie Development Corp.* v. *Hartford Cement & Building Supply Co.*, 196 Conn. 233, 241, 492 A.2d 159 (1985) ("[o]n a motion to open the moving party must not only allege, but must also make a showing sufficient to satisfy the requirements of § 52-212" [internal quotation marks omitted]). Otherwise, the court should deny the motion. Accordingly, if Judge Bear believed in the present case that the father could not enter a plea in the neglect proceeding unless he was a custodial parent, and that he had not made the requisite showing that he was a custodial parent, he should have denied the motion to open unconditionally. Conversely, if he believed that the father had made the requisite showing, he should have granted the motion without condition.

supra, 346 n.4. Nor can we conclude that the ruling was appealable under *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983) ("[a]n otherwise interlocutory order is appealable in two circumstances: [1] where the order or action terminates a separate and distinct proceeding, or [2] where the order or action so concludes the rights of the parties that further proceedings cannot affect them"). The ruling neither terminated a separate and distinct proceeding nor so concluded the rights of the parties that further proceedings could not affect them. Rather, it was an interlocutory order for which the father was not required or, indeed, permitted to seek appellate review until final judgment was rendered. *Hartford Federal Savings & Loan Assn.* v. *Tucker*, 192 Conn. 1, 5, 469 A.2d 778 (1984) (review of interlocutory order must await appeal from final judgment). Accordingly, to the extent that Judge Bear "denied" the motion to open, the father properly may challenge that ruling in this appeal.

We have concluded that Judge Bear should have unconditionally granted the father's motion to open the adjudication of neglect once the father demonstrated that he did not stand silent, regardless of whether he was a noncustodial parent. Moreover, the commissioner has not contested on appeal Judge Bear's finding that the father did not stand silent at the original neglect proceeding, nor has the commissioner claimed that that finding could not justify opening the adjudication of neglect. Accordingly, we conclude that the trial court improperly denied the father's motion to open. We therefore reject the commissioner's claim that the neglect adjudication is being subjected to an impermissible collateral attack.

Finally, we address the commissioner's claim that the Appellate Court improperly reversed the judgment of the trial court terminating the mother's parental rights on a ground that was not relevant and that the

mother did not raise. The commissioner points out that Judge Olear found two independent statutory grounds for terminating the mother's parental rights, namely, § 17a-112 (j) (3) (B) (i) and (E). Under § 17a-112 (j) (3) (B) (i), the trial court may terminate parental rights if the requirements of § 17a-112 (j) (1) and (2) have been met[22] and the child "has been found by the Superior Court . . . to have been neglected or uncared for *in a prior proceeding* . . . ." (Emphasis added.) Under § 17a-112 (j) (3) (E), the trial court may terminate the parent's parental rights if the requirements of § 17a-112 (j) (1) and (2) have been met and "the parent of a child under the age of seven years who *is neglected or uncared for,* has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families . . . ." (Emphasis added.) The commissioner argues that, even if this court concludes that the prior adjudication of neglect must be opened and, therefore, the mother's parental rights could not be terminated under § 17a-112 (j) (3) (B) (i), Judge Olear's finding that the commissioner had proved the elements of § 17a-112 (j) (3) (E), necessarily included a new finding that the children were neglected at the time of the termination proceeding. Accordingly, the commissioner argues, there is no basis for reversing the judgment terminating the mother's parental rights under that provision. In addition,

---

[22] Section 17a-112 (j) (1) requires a finding that the department has made reasonable efforts to locate the parent and to reunify the child with the parent unless the court has determined that the parent is unable or unwilling to benefit from reunification efforts or if the court determines that such efforts are not required. Section 17a-112 (j) (2) requires a finding that termination is in the best interest of the child.

the commissioner argues that the Appellate Court should not have addressed this issue because the mother did not raise it on appeal.

We are not persuaded. In finding that the commissioner had established that the children were neglected for purposes of § 17a-112 (j) (3) (E), Judge Olear did not rely on any evidence that was presented at the termination proceeding, but expressly relied on the finding that the children "were adjudicated neglected on August 2, 2007."[23] Indeed, Judge Olear specifically concluded that the neglect adjudication did not have to be "remade" at the termination proceeding because the father was not a custodial parent. Moreover, the commissioner has not claimed that Judge Olear was, for some reason, *prohibited* from relying on a prior neglect adjudication under § 17a-112 (j) (3) (E) and, therefore, was required to make a new finding of neglect at the termination proceeding. Accordingly, because we have determined that the Appellate Court properly concluded that the prior neglect adjudication must be opened, we must also conclude that the Appellate Court properly concluded that there is no longer any basis for Judge Olear's finding that the children were neglected, regardless of whether the mother raised that claim on appeal.

We conclude by emphasizing that this court is well aware and concerned that our decision in this matter will require a new neglect proceeding, thereby further

[23] In support of its claim to the contrary, the commissioner points to the forms entitled "ORDER, TERMINATION OF PARENTAL RIGHTS AND APPOINTMENT OF STATUTORY PARENT/GUARDIAN" that Judge Olear completed for each child after the termination proceeding. Judge Olear checked the boxes on the forms indicating that she had found by clear and convincing evidence that, in accordance with § 17a-112 (j) (3) (E), the mother had a "child . . . who is neglected or uncared for . . . ." We do not agree that the fact the Judge Olear checked these boxes compels the conclusion that Judge Olear made a new independent finding of neglect at the termination proceeding.

delaying any certainty and stability regarding the future of these innocent children. Cf. *In re Savanna M.*, 55 Conn. App. 807, 814, 740 A.2d 484 (1999) ("[w]e have consistently held that allowing a child to languish in foster care is not in the child's best interest"). We are also cognizant, however, that parents have a fundamental right to raise their children as they see fit, in the absence of neglect or abuse. *In re Melody L.*, 290 Conn. 131, 178, 962 A.2d 81 (2009). In an attempt to reconcile these two concerns, it is hereby ordered, pursuant to our supervisory authority over the administration of justice, that the neglect proceeding and any subsequent proceeding to terminate the respondents' parental rights be expedited. See *State* v. *Ouellette*, 271 Conn. 740, 762 n.28, 859 A.2d 907 (2004) ("[s]upervisory powers are exercised to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole" [internal quotation marks omitted]).

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.