******************************************************************

   The ''officially released'' date that appears near the beginning of this opinion is the date the opinion was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

   This opinion is subject to revisions and editorial changes, not of a substantive nature, and corrections of a technical nature prior to publication in the Connecticut Law Journal.

******************************************************************

# IN RE JA'MAIRE M.*
## (AC 43710)

Lavine, Alvord and Cradle, Js.

*Syllabus*

The respondent father appealed to this court from the judgment of the trial court terminating his parental rights with respect to his minor child. The child had previously been adjudicated neglected, but the father was not a party to the neglect petition filed by the petitioner, the Commissioner of Children and Families, and did not participate in the neglect proceeding because the mother claimed another man was the father of the child. Following the results of a paternity test, the trial court joined the father into the case and, thereafter, the trial court ordered specific steps for the father and the Department of Children and Families amended its permanency plan to focus on reunification with the father. The father did not fulfill the court-ordered steps and subsequently, the petitioner sought termination of the father's parental rights pursuant to statute (§ 17a-112), which the trial court granted. On appeal, the father claimed that the trial court erred by predicating its termination of parental rights judgment on the prior neglect adjudication, which he claimed was rendered improperly because the child was adjudicated neglected in his absence and he had no opportunity to plead. *Held* that the trial court did not err in terminating the respondent father's parental rights by relying on a finding that the child was neglected, which was made at a previous proceeding at which the father was not a party, as the father's unpreserved claim was an impermissible collateral attack on a validly rendered final judgment of neglect; the father's absence from the neglect proceeding did not deprive him of any due process because, although the father was immediately joined into the case and advised of the remedies available to him to contest the neglect adjudication, the father acquiesced in the judgment of neglect and did not at any time avail himself of the avenues to challenge it, by filing a motion to open the judgment or to revoke commitment, and the important public policy interests inherent in juvenile cases reinforced the need for timely resolutions of disputed issues; furthermore, the department attempted to work with the father with the goal of reunification through satisfaction of court-ordered specific steps, but the father failed to fully meet the criteria in the specific steps and then failed to appear both at his plea date and at the termination of parental rights trial.

Argued September 8—officially released November 20, 2020**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of New Haven, Juvenile Matters, and tried to the court, *Marcus, J.*; judgment terminating the respondents' parental rights, from which the respondent father appealed to this court. *Affirmed.*

*Albert J. Oneto IV*, assigned counsel, for the appellant (respondent father).

*Seon Bagot*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

LAVINE, J. The respondent father, Randy F., appeals from the judgment of the trial court terminating his parental rights with respect to his minor child pursuant to General Statutes § 17a-112 (j). On appeal, the respondent claims that, in terminating his parental rights, the trial court improperly relied on a finding that the child was neglected, which was made at a previous proceeding at which the respondent was not present.[1] Because the respondent's appeal constitutes an impermissible collateral attack on the neglect judgment, we affirm the judgment of the trial court terminating his parental rights.

The following facts and procedural history set forth in the court's memorandum of decision and the record are relevant to this appeal. The child was born in November, 2016, to the respondent and E, the child's mother. E indicated to agents of the Department of Children and Families (department) that the man with whom the child was living, J, was his biological father. In August, 2017, when the child was nine months old, a department investigation into the child's circumstances resulted in an adjudication that the child was neglected.

Prior to the neglect proceeding, on August 10, 2017, the department received a report that the child had been admitted to Yale New Haven Hospital for emergency medical treatment. E's whereabouts were unknown and the putative father, J, who was not named on the child's birth certificate, lacked medical decision-making authority. After investigating the child's circumstances and instituting a ninety-six hour hold on the child, the petitioner, the Commissioner of Children and Families (commissioner),[2] obtained temporary custody of the child and filed a neglect petition.

On October 19, 2017, the court held a hearing to address the commissioner's neglect petition. The court dismissed J from the case on the basis of a department ordered paternity test, which established that he was not, in fact, the child's biological father. E testified that the respondent was the child's father. She entered a plea of nolo contendere to the neglect petition, which the court accepted. Finding that the child was neglected and had been permitted to live in conditions injurious to his well-being, the court determined on the record that it was in the best interest of the child for him to be committed to the custody of the commissioner. The court thus adjudicated the child neglected at the October 19, 2017 hearing and committed him to the custody of the commissioner pending further order of the court. After the neglect adjudication, the commissioner moved to cite the respondent into the case as a party on October 27, 2017. The court granted the motion. The commissioner filed a petition seeking commitment of the child to the commissioner's custody, and, after efforts to

locate the respondent were unavailing, the department gave notice by publication in the New Haven Register.

On December 28, 2017, the department and the respondent appeared before the court for a hearing on the respondent's status. The court informed the respondent that the child had been adjudicated neglected and was in the care of the department. The court also informed the respondent that "[y]ou have the right to have a hearing moving forward on any future changes in the case. . . . Your lawyer is the one you need to talk to about the case. . . . You have a right to have any dispositional hearing at this point as to the issue of neglect and then on any new petitions that may be forthcoming in the future. You understand your rights I've just explained them to you?" The respondent replied in the affirmative. Subsequently that day, the court appointed an attorney for the respondent. The court ordered a paternity test pursuant to the commissioner's outstanding motion.

On April 10, 2018, the court found, on the basis of the paternity test, that the respondent was, in fact, the child's father. A permanency plan hearing was held on June 28, 2018, before the court, at which the commissioner proposed termination of parental rights and adoption. The respondent objected. Subsequently, in July, 2018, the commissioner moved to amend the permanency plan with a new focus on reunification and to order specific steps for the respondent. The court granted the commissioner's motion on August 2, 2018, and ordered specific steps for the respondent.[3]

The department took measures to facilitate visitation between the child and the respondent pursuant to the permanency plans and specific steps, but the respondent failed to satisfy the specific steps set out for him. As a result, following a preliminary hearing, the commissioner filed a petition on July 1, 2019, seeking the termination of the respondent's parental rights pursuant to § 17a-112. The commissioner alleged that the child had been found in a prior proceeding to have been neglected, that the father had failed to achieve a sufficient degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and the needs of the child, he could assume a responsible position in the child's life, and that it was in the child's best interest for the respondent's parental rights to be terminated. In its social study, the department detailed the reasonable efforts it had made to reunify the child with the respondent.[4]

The respondent defaulted on the commissioner's petition for the termination of his parental rights. Following abode service on July 10, 2019, the respondent failed to appear on his plea date of July 30, 2019. The court scheduled a trial for September 5, 2019, to consider the termination of parental rights petition. The respondent failed to attend the trial. At trial, James Roth, a social

worker for the department, testified as to the department's repeated efforts to reach the respondent. Roth characterized the respondent's progress as follows: "As far as [the] father, he would take about a step forward and twenty steps back. He would go to these fatherhood programs and then the next thing you know he would be arrested for a larceny or he would all of a sudden not show up or not show up to a visit and then—so he showed very minimal progress up until now, which has been no progress at all." Roth testified that he did not see any improvement from either parent and that the respondent had not demonstrated any stability. Roth opined that termination of parental rights and adoption were in the child's best interest.

On November 7, 2019, the court signed a transcript of its September 9, 2019 oral decision terminating the respondent's paternal rights pursuant to § 17a-112 (j) (3) (B) (i). In the adjudicative portion of its decision, the court found that "the child has been found in a prior proceeding to have been neglected or uncared for." The court found that the department had made reasonable efforts to reunify the respondent and the child through visits and counseling services, but "[t]he [respondent] is also unable or unwilling to benefit from those reunification efforts."[5] The court further found, by clear and convincing evidence, that the respondent had failed to achieve such a degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and the needs of the child, he could assume a responsible position in the child's life. Finally, the court found that the respondent did not appear in the termination of parental rights case, despite having been notified by both Roth and the department during its last contact with the respondent in early August, 2019.

In the dispositional portion of its decision, the court considered and made findings as to each of the seven factors in § 17-112 (k) on the basis of clear and convincing evidence. The court found that the department had made reasonable efforts to reunify the child and the respondent, had complied with all court orders, and had timely offered the respondent "services in accordance with the specific steps," but that the respondent "did not successfully engage in any services offered to [him] and failed to comply with [his] specific steps." The court found that providing additional time for the respondent to rehabilitate would be unavailing because the respondent had not made sufficient efforts "to adjust [his] situation in order to parent [the child]," or "to conform [his] conduct to even minimally acceptable parental standards." The court concluded that termination of the respondent's parental rights as to the child would serve the best interest of the child, and appointed the commissioner as statutory parent. This appeal followed.

On appeal, the respondent claims that the trial court erred by predicating its judgment terminating his parental rights as to the child on the prior neglect adjudication, which he contends was entered improperly. Specifically, he objects to the fact that the underlying neglect proceeding took place in his absence, as he first appeared in the case as a party more than two months later. He argues that because § 17a-112 (j) (3) (B) (i) requires a finding that the child "has been found by the Superior Court . . . to have been neglected, abused or uncared for in a prior proceeding" and because he was denied an opportunity to participate or plead in response to the prior neglect proceeding, the neglect adjudication was invalid and that the trial court erred by relying on it as a predicate for its judgment terminating his parental rights as to the child. The respondent has not otherwise challenged the court's termination of his parental rights or its factual underpinnings.

In response, the commissioner argues that the respondent's appeal is unreviewable because it constitutes an impermissible collateral attack on the underlying neglect judgment. The commissioner contends that the appeal effectively targets a previous final judgment, and because the neglect judgment was rendered validly and the respondent failed to capitalize on avenues available to him to challenge it, he cannot now attack it collaterally. We agree with the commissioner that the respondent's appeal is an impermissible collateral attack on the validly rendered neglect judgment, which, as noted, was rendered before the respondent's paternity had even been established.

We begin our analysis by setting forth the relevant legal principles and applicable standard of review. "[A] claim that a trial court may not reconsider the issue of neglect during a termination of parental rights proceeding presents a mixed question of fact and law because it involves the application of factual determinations to the statutory scheme for the protection of the well-being of children. In such circumstances, an appellate court employs the de novo standard of review." *In re Stephen M.*, 109 Conn. App. 644, 658, 953 A.2d 668 (2008). We will not, however, review claims that are collateral attacks on prior judgments. With regard to the statutory scheme set forth in § 17a-112, the child's need for stability places an emphasis on the need for litigants to follow proper procedural avenues in order to obtain review. *See In re Shamika F.*, 256 Conn. 383, 406–407, 773 A.2d 347 (2001) (permitting late collateral attack would be procedurally impermissible because it would "interfere seriously with [children's] ability to experience any kind of family stability with either a biological or a foster family" and undermine "the purpose of the collateral attack rule as well as the goal of our state agencies in protecting the neglected children of Connecticut").

Section 17a-112 (j) provides, as one of its threshold statutory grounds, that "[t]he Superior Court . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that . . . (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected, abused or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."[6]

"A neglect petition and a petition for the termination of parental rights present distinct and separate claims." *In re Stephen M.*, supra, 109 Conn. App. 657 n.21. A judgment finding that a child is neglected is an immediately appealable final judgment; id., 665; and as a final judgment, it must be challenged via *direct* appeal. As a key principle, "[i]f no appeal is filed in a timely fashion, the parents may not collaterally attack those findings during a termination of parental rights trial, and the trial court adjudicating the termination of parental rights is bound by the findings made in the prior proceeding." Id. "[O]ur child welfare laws are designed in such a way that subsequent proceedings are predicated on findings made and orders issued in prior proceedings." Id., 663. In a termination of parental rights trial, "the issue to be litigated with respect to [a parent's] failure to achieve personal rehabilitation . . . is whether the respondent . . . can be restored to a constructive useful role as a parent within a reasonable time considering the age and needs of the child . . . . " (Citations omitted.) Id., 665 n.25. The public policy interests inherent in juvenile cases reinforce this need for timely resolutions of disputed issues. *See In re Shamika F.*, supra, 256 Conn. 406–407; *see also In re Jonathan M.*, 255 Conn. 208, 231, 764 A.2d 739 (2001) ("as parens patriae, the state is also interested in the accurate and speedy resolution of termination litigation in order to promote the welfare of the affected child"); *In re Stephen M.*, supra, 664 ("[t]he best interests of the children, especially their interests in family stability and permanency, support the conclusion that findings in earlier child welfare proceedings cannot be attacked collaterally in later proceedings"). Because the judgment of neglect is a final judgment, "under § 17a-112 (j) (B) (i), the petitioner did not have to prove at the termination hearing that the [child was] neglected but only that the [child] *had been found* to be neglected in a prior proceeding."[7] (Emphasis added.) Id., 659.

The respondent argues that the neglect adjudication could not be relied on to satisfy the requirements of § 17a-112 (j) (3) (B) (i) because the child was adjudi-

cated neglected in his absence and he had no opportunity to plead. He argues that he was entitled to be a party to the proceeding, even though his paternity had not yet been established. He further argues that because he was not made a party and "[a]t no time did the court . . . canvass him about whether he wished to contest the existing neglect adjudication," the commissioner cannot use the judgment of neglect against him in a subsequent termination proceeding. We disagree that there was any due process violation in the respondent's case. The respondent's claim is unavailing because his paternity was not established until after the neglect proceeding, at which time he was immediately joined into the case and was advised of the remedies available to him to contest the neglect adjudication, but he failed to take advantage of any of them. Acceptance of his argument would permit a collateral attack on a valid final judgment and would undermine important public policy.

A finding that a child is neglected is not a finding of fault against the parent but a fact relating to the status of the child. See *In re T.K.*, 105 Conn. App. 502, 505–506, 939 A.2d 9, cert. denied, 286 Conn. 914, 945 A.2d 976 (2008) ("[A]n adjudication of neglect relates to the status of the child . . . . Although [General Statutes] § 46b-129 requires both parents to be named in the petition, the adjudication of neglect is not a judgment that runs against a person or persons so named in the petition; [i]t is not directed against them as parents, but rather is a finding that the children are neglected . . . ." (Emphasis omitted; internal quotation marks omitted.)); see also *In re Zamora S.*, 123 Conn. App. 103, 110, 998 A.2d 1279 (2010) ("[a] neglect petition is sui generis and, unlike a complaint and answer in the usual civil case, does not lead to a judgment for or against the parties named" (internal quotation marks omitted)); *In re David L.*, 54 Conn. App. 185, 193, 733 A.2d 897 (1999) ("[t]he statutes and rules of practice . . . do not afford a parent in a neglect proceeding the right to require the trial court to adjudge each parent's blameworthiness for a child's neglect"). Consequently, a parent who is absent from neglect proceedings is not denied due process when his or her parentage of the child is not yet known.[8]

Here, the commissioner reasonably believed that a different man was the child's father. At the neglect hearing, E identified the respondent as the father. A court-ordered paternity test confirmed E's assertion in April, 2018, at which point the court found that the respondent was the child's father. Thus, although the respondent was not a party to the neglect proceeding in October, 2017, he was not legally required to be a party because the proceeding centered on the status of the child. See *In re T.K.*, supra, 105 Conn. App. 505–506; see also *In re Zoey H.*, 183 Conn. App. 327, 346–47, 192 A.3d 522 (father's subsequent entry into case did not

invalidate previous neglect adjudication and obligate court to afford him fitness hearing), cert. denied, 330 Conn. 906, 192 A.3d 425 (2018).

The case on which the commissioner relies, *In re Zoey H.*, supra, 183 Conn. App. 327, features strikingly similar facts to the present case. In *In re Zoey H.*, the commissioner filed a neglect petition on behalf of the child. Id., 337. The mother identified a man as the father. The putative father was named in the case and stood silent at the neglect hearing. Id., 337–38. The child was then adjudicated neglected and committed to the custody of the commissioner. Id., 338. The respondent appeared six months later and a judgment of paternity was entered. Id., 343. He subsequently filed two motions to revoke commitment, both of which were denied, and then appealed the denial of his second motion, asserting a due process right to an adjudicatory hearing on his fitness as a parent. Id., 343–44. This court rejected his request, concluding that the trial court did not need to hold a hearing to determine his fitness when the child already had been found uncared for prior to his entry into the case. This court explained that "[the child] was adjudicated uncared for by the Superior Court and committed to the care and custody of the petitioner before the respondent ever appeared and asserted that he was [the child's] father; indeed, a different man was purported to be her father, and he appeared at the hearing on the petition. The respondent's later appearance in the case and the results of his paternity test do not change the historical fact that, at the time of her commitment, [the child] was homeless and, therefore, uncared for within the meaning of our child protection statutes, regardless of parentage." Id., 338–39.

The same logic holds true in the present case. The respondent's absence at the neglect hearing is not legally significant because the child's father was undetermined at the time the child was adjudicated neglected. Just as in *In re Zoey H.*, the respondent in the present case was not known to be the child's biological father when the commissioner filed her preliminary neglect petition. See id., 337. As noted, when the department learned from E about the respondent and his alleged paternal status, the department took timely measures to join him into the proceedings and to seek a judgment of his paternity. At the hearing on December 28, 2017, the respondent was advised by the court of the avenues he could take to challenge the finding of neglect. The court arranged for legal representation and advised him that "[t]he child's in the care and custody of the [department] already and has already been found neglected," but that the respondent had "the right to have a hearing moving forward on any future changes in the case" and "to have any dispositional hearing at this point as to the issue of neglect and then on any new petitions that may be forthcoming in the future." The respondent's absence from the

neglect proceeding thus did not deprive him of any due process, because the department subsequently joined him to the proceeding and the court advised him of the avenues available to him to challenge the judgment. The respondent did not file a motion to open the neglect judgment, even though the statutory four month period for opening the judgment had not yet expired, nor did he file any motion to revoke commitment. His failure to do so renders his appeal an impermissible collateral attack.

"The department sets about to do its work pursuant to the findings made and steps ordered pursuant to a trial on a neglect petition. Those findings and orders place the respondent parents on notice as to what is expected of them if they are to regain custody of their children." *In re Stephen M.*, supra, 109 Conn. App. 665. The department worked with the respondent until mid-2019, with the goal of reunification through satisfaction of court-ordered specific steps. Throughout this process, the respondent acquiesced in the judgment of neglect and did not at any time avail himself of his opportunity to challenge it. The court found that the department made reasonable efforts to achieve its goal of reunification, but that the respondent failed to fully meet the criteria in his court-ordered specific steps and then failed to appear both at his plea date and at the termination of parental rights trial itself. In sum, the record indicates that the respondent, after taking no action to challenge the adjudication that his child was neglected and acquiescing in that judgment, now seeks to collaterally attack that judgment following the termination of his parental rights. This he may not do.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** November, 20, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The court also terminated the parental rights of the child's mother, E, finding that she had been unavailable to the Department of Children and Families since 2017 and had abandoned the child. Because she has not appealed, we refer in this opinion to the respondent father as the respondent.

[2] The attorney for the minor child submitted a statement, pursuant to Practice Book § 67-13, adopting the commissioner's brief.

[3] The newly amended permanency plan of reunification remained concurrent with the plan of termination of parental rights and adoption.

[4] The department asserted that the respondent "has shown an inability to be rehabilitated. . . . [The respondent] has not complied with the expectations set by the [d]epartment regarding employment, housing, and creating a strong bond with his son. [The respondent] has also shown an inability to fully comprehend the situation regarding his son and [has not taken] responsibility."

[5] The record reveals that following the respondent's April, 2018 incarceration, the department arranged a total of nine monthly visits with the child pursuant to the amended permanency plan, and that these visits became weekly upon the respondent's release from incarceration in February, 2019. The respondent exhibited inconsistent attendance, as he was "habitually . . . late to visits and has missed at least [two] visits without notice."

[6] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, except that such finding is not required if the court has determined at a hearing pursuant to section 17a-111b, or determines at trial on the petition, that such efforts are not required, (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected, abused or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[7] After the commissioner establishes that the child has been found neglected in a prior proceeding, the commissioner still has the burden to show in the dispositional phase, by clear and convincing evidence, that the "continuation of the respondent's parental rights is not in the best interest of the child." *In re Alison M.*, 127 Conn. App. 197, 211, 15 A.3d 194 (2011).

[8] The respondent relies principally on *In re Joseph W.*, 301 Conn. 245, 21 A.3d 723 (2011), for his argument that the trial court had an obligation to canvass him when he first appeared in the case, so as to ensure that he had a fair opportunity to contest the neglect adjudication. *In re Joseph W.*, does not advance the respondent's argument. In that case, the court improperly entered a neglect adjudication where the father was present, yet was prevented from contesting it or subsequently opening the judgment. Id., 261–63. On appeal, this court concluded that the neglect judgment was improper because the father had no opportunity to contest it, and thus it could not be relied on to subsequently terminate the father's parental rights. See *In re Joseph W.*, 121 Conn. App. 605, 621, 997 A.2d 512 (2010), aff'd, 301 Conn. 245, 21 A.3d 723 (2011). In affirming this court's ruling, our Supreme Court rejected the commissioner's argument that the appeal was an impermissible collateral attack on the denial of the motion to open, concluding that the ruling was not an appealable final judgment because the court did not "categorically deny" the motion to open. *In re Joseph W.*, supra, 301 Conn. 264.

This case does not feature the due process problems that were present in *In re Joseph W.* The respondent in the present case was unknown to the commissioner when the underlying neglect adjudication took place, unlike the respondent in *In re Joseph W.*, who was a party to the proceeding and who attempted to enter a plea at that time. The respondent in the present case was not compelled to stand silent because the court advised him of his rights when he first appeared. Thus, the neglect adjudication in the present case was a proper final judgment. The respondent simply did not exercise his right to file a motion to open the judgment or otherwise act to challenge the underlying neglect adjudication directly.